DA 13-0228

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 205

TIDYMAN'S MANAGEMENT SERVICES INC., a Washington corporation; LENORA DAVIS BATEMAN, VICKI EARHART, CAROL HEALD, THERESA YOUNGQUIST, BARBARA GAUSTAD, SHARON YOUNG, DIANE MOLES, KYLE BAILEY, MARK RADEMAN, DREW OLSEN, CHADNEY SAWYER, THOMAS NAGRONE, DAN NAGRONE, DARRELL NACCARATO, PAT DAHMEN, JANELLE SELLS, TERRI ORTON, WILLIAM EVANSON, BILL EVANSON, TAMMY EVANSON, LARRY THOMPSON, JASON GUICE, JAMIE GUICE, LAURA SQUIBB, RICK BAILLIE, JEFFREY TUCKER, AMY TUCKER, MARYBETH WETSCH, LAURA STOCKTON, JERRY STREETER, CLARA KUHN, NANCY McDONALD, TED NUXOLL, CINDY NUXOLL and DEAN CARLSON, individuals,

          Plaintiffs, Appellees, and Cross-Appellants,

   v.

MICHAEL A. DAVIS; JOHN MAXWELL;

        Defendants and Appellees,

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; and JOHN DOES 1-10,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV-10-695
                Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

         James H. Goetz, Goetz, Baldwin & Geddes, P.C., Bozeman, Montana;
         Robert F. James, Gary M. Zadick, Mary K. Jaraczeski, Ugrin, Alexander,

Zadick & Higgins, P.C., Great Falls, Montana; Allan H. Baris, Moore, O'Connell & Refling, Bozeman, Montana; Timothy R. MacDonald, Edwin P. Aro, Arnold & Porter, LLP, Denver, Colorado
(*Attorneys for National Union Fire Insurance Company of Pittsburgh, PA*)

For Appellees:

John L. Amsden, Monte D. Beck and Anthony F. Jackson, Beck & Amsden, PLLC, Bozeman, Montana; G. Patrick Hagestad, Perry J. Schneider, Milodragovich, Dale & Steinbrenner, PC, Missoula, Montana
(*Attorneys for Individual Plaintiffs, Appellees and Cross-Appellants*)

Gregory S. Munro, Attorney at Law, Missoula, Montana; William W. Leaphart, Attorney at Law, Helena, Montana
(*Co-counsel for Appellees and Cross-Appellants*)

Michael G. Black, Black Law Office, Clinton, Montana
(*Attorney for Tidyman's Management Services*)

James B. King, Evans, Craven & Lackie, P.S., Spokane, Washington; Kathleen L. DeSoto, Garlington, Lohn & Robinson, PLLP, Missoula, Montana
(*Attorneys for Michael A. Davis*)

James A. McPhee, Workland & Witherspoon, PLLC, Spokane, Washington; Dean A. Hoistad, Hoistad Law Firm, PLLC, Missoula, Montana
(*Attorneys for John Maxwell*)

For Amicus Curiae:

Dale R. Cockrell, Moore, Cockrell, Goicoecha & Axelberg, P.C., Kalispell, Montana; Martha Sheehy, Sheehy Law Firm, Billings, Montana
(*Attorneys for Montana Defense Trial Lawyers Association*)

Guy W. Rogers and Jon A. Wilson, Brown Law Firm, P.C., Billings, Montana
(*Attorneys for National Association of Independent Insurance Adjusters*)

Amy Eddy, Eddy Sandler Trial Attorneys, PLLP, Kalispell, Montana, Terry Trieweiler, Trieweiler Law Firm, Whitefish, Montana
(*Attorneys for United Policyholders and the Montana Trial Lawyers Association*)

Submitted on Briefs:  April 23, 2014
Decided:  August 1, 2014

Filed:

_____
Clerk

2

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     National Union Fire Insurance Company of Pittsburgh, Pennsylvania (NUFI) appeals from the order of the Montana Fourth Judicial District Court, Missoula County, granting the plaintiffs' motion for summary judgment and motions to approve stipulations for entry of judgment and enter judgment accordingly. We affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.

## ISSUES

¶2     We address the following issues:

*1.     Did the District Court correctly conclude that Montana, rather than Washington, law applied in this case?*

*2.     Did the District Court err in concluding that NUFI had breached its duty to defend without analyzing coverage under the policy?*

*3.     Did the District Court err in denying NUFI a hearing and discovery on reasonableness and collusion related to the stipulated settlements?*

*4.     Did the District Court err by awarding pre-judgment interest, or in its determination of when the interest began accruing?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On May 21, 2010, the plaintiffs and Tidyman's Management Services Inc. (TMSI) filed a complaint against Michael A. Davis (Davis) and John Maxwell (Maxwell) in their capacities as officers and directors of TMSI and/or its subsidiary, Tidyman's LLC. The complaint alleged breach of corporate duties arising out of a merger between TMSI and

SuperValu, which created Tidyman's LLC, and requested punitive damages and attorney fees. The merger at issue occurred despite advice from a financial advisor TMSI had retained that the company should be sold, and the complaint alleged that the directors and officers, including Davis and Maxwell, had misrepresented the merit of the transaction. TMSI is a Washington corporation with its principal place of business in Montana, and is a member of Tidyman's LLC. Essentially, employee shareholders own TMSI.

¶4 On January 8, 2007, the plaintiffs had filed a complaint in federal court alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA). They amended their complaint in December 2007 to include allegations against the officers and directors of TMSI for breach of corporate fiduciary duties. In the course of the federal litigation, the ERISA claims settled. The plaintiffs also settled their claims against the officers and directors of TMSI, except for those claims against Davis and Maxwell. During the federal court litigation, NUFI provided a defense to Davis and Maxwell through their respective counsel, James King (King) and James McPhee (McPhee). After the settlements, the federal district court dismissed the federal court action without prejudice after declining to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. *See Nagrone v. Davis*, No. CV-07-04-M-DWM-RKS, 2010 U.S. Dist. LEXIS 47748 (D. Mont. Apr. 21, 2010); *Nagrone v. Davis*, No. CV 07-04-M-DWM-RKS, 2010 U.S. Dist. LEXIS 47750 (D. Mont. May 14, 2010). The plaintiffs and TMSI then filed the instant action in state district court, alleging the same claims against Davis and Maxwell as were alleged in the federal litigation.

4

¶5 In 2006, NUFI issued a corporate liability insurance policy (Policy) to Tidyman's LLC and insured Davis and Maxwell against liability incurred in their positions as officers and directors of Tidyman's LLC. Pursuant to this Policy, NUFI provided a legal defense for Davis and Maxwell throughout the federal court litigation. When the plaintiffs filed in state court, they added TMSI as a plaintiff in their suit against Davis and Maxwell in their capacities as directors and officers of the LLC—of which TMSI was a member. On August 5, 2010, after the state court litigation had commenced, Jessica Lermond (Lermond), who worked for Chartis Claims, Inc. (Chartis), which managed claims on behalf of NUFI, sent a letter to counsel for Davis and Maxwell asserting that NUFI would no longer cover defense costs in the matter. She based the denial of coverage upon the "Insured v. Insured" exclusion set forth in Clause 4(i) as amended by Endorsement #13 of the Policy, stating:

> As set forth in Clause 4(i) of the Policy as amended [by] Endorsement 13, [NUFI] shall not be liable to make any payment for Loss which is brought by any Insured (other than an Employee, but solely with respect to a Securities Claim) or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of any Insured . . . .
> . . .
> Please note that based on the foregoing, it appears that the Complaint filed in on [sic] May 21, 2010, in the Montana Fourth Judicial District, County of Missoula does not implicate the Policy . . . .

In the ensuing litigation, NUFI has conceded that Lermond's interpretation incorporated a flawed understanding of the corporate structure.

5

¶6    After Davis and Maxwell received this letter, on August 12, 2010, the plaintiffs and TMSI amended their complaint to add NUFI as a defendant. The plaintiffs and TMSI alleged that until Lermond's August 5, 2010, letter, NUFI had provided a defense under the Policy to Davis and Maxwell. In addition to their previous claims, the plaintiffs and TMSI also sought a declaratory judgment that the liability asserted against Davis and Maxwell was covered under the Policy.

¶7    On September 2, 2010, Davis's counsel, King, sent a letter to Lermond inquiring as to whether NUFI would continue to pay defense costs for the action, so he could advise his client about his options:

> Please advise whether the carrier is going to continue to pay for the costs of defense of this matter through and including trial and to include reasonable attorney's fees, expert expenses, etc. Your letter states that there is no coverage but you left a voice mail about paying for "a Motion to Dismiss."

¶8    When Lermond failed to respond, King sent a follow up letter on September 20, 2010: "This will serve as a follow up to my September 2nd correspondence to your [sic] regarding this matter. I would appreciate an answer to the question posed forthwith." On September 23, 2010, NUFI filed a motion to dismiss for lack of coverage. While that motion was pending, Lermond failed to respond "forthwith" and, on October 26, 2010, Maxwell's counsel, McPhee, was obliged to send a third letter on behalf of himself and King, again requesting a response as to whether the insurer would pay defense costs. On October 28, 2010, counsel for Chartis contacted McPhee explaining:

> In Ms. Lermond's letter to you she advised that "[b]ased on the Complaint filed on May 21, 2010, there is no longer any coverage for this matter under the Policy." Accordingly, since there is no coverage, National Union is not going to continue to pay the costs of defense of this matter.

6

The same day, King received a letter from Lermond containing the same language. Both letters invited the counsel to submit documentation or other information that might show NUFI's coverage position was in error.

¶9 Meanwhile, on October 25, 2010, King filed a "stipulation resulting from insurer's refusal to provide coverage" with the court, recognizing his client's inability to pay for a defense and need to protect himself. The stipulation provides that Davis is an insured under the Policy; that 29 million dollars in damages is sought for Davis's alleged breach of fiduciary duties as an officer and/or director; that NUFI has wrongfully denied a defense to Davis and Davis lacks the funds to defend himself; that Davis assigns all rights, claims and causes of action against NUFI to the plaintiffs; and that the plaintiffs will not seek to execute judgment against Davis's personal assets. The plaintiffs and TMSI filed a motion to approve that stipulation for entry of judgment on November 5, 2010. On November 19, 2010, Allan Baris (Baris), representing NUFI, sent King and McPhee a letter advising them of "changes to [NUFI's] coverage position from that set forth in Jessica Lermond's letter of August 5, 2010." The letter provided that NUFI would advance defense costs to Davis and Maxwell, subject to a full reservation of rights. On November 29, 2010, the plaintiffs, TMSI and Maxwell filed an identical stipulation to the one with Davis and moved to approve the stipulation for entry of judgment.

¶10 That same day, the plaintiffs moved for summary judgment, alleging that NUFI had breached its duty to defend Maxwell and Davis and was liable for the stipulated settlement between the plaintiffs, TMSI, Davis and Maxwell. On December 16, 2010, NUFI filed a request for evidentiary hearing and jury demand on the two motions to

7

approve stipulations for entry of judgment. On December 23, 2010, NUFI moved for a protective order pursuant to M. R. Civ. P. 26(c) postponing discovery until after the court had ruled on NUFI's motion to dismiss. On June 10, 2011, the District Court ruled on several motions, denying NUFI's motion to dismiss and motion for a protective order. On July 19, 2011, NUFI moved for application of Washington and Delaware law. The District Court denied that motion. On November 23, 2011, NUFI served a number of discovery requests on the plaintiffs. The plaintiffs moved for a protective order to avoid complying with the requests. NUFI later moved to compel certain depositions and that request was denied. On February 10, 2012, NUFI moved for summary judgment on the grounds that the plaintiffs' claims were not covered by the policy and that the plaintiffs lacked standing to assert a covered claim.

¶11     The District Court heard oral argument on the motions for summary judgment and the plaintiffs' motions to approve the stipulations on December 5, 2012. At the hearing, both parties presented arguments related to the reasonableness of the stipulated settlements. Among the plaintiffs' arguments were the following:

> MR. AMSDEN: [W]ith respect to the amount, every year, Mike Davis had to sign a valuation. And there were five valuations in about 1998, some performed by Ernst and Young, some performed by Columbia Financial Advisors. And those were performed on an annual basis . . . .
>
> So what we had Tim Sather do from the Galusha firm is analyze those, put them together, and come up with a value for the assets of about 29 million, which is the amount we sought and the amount we seek today. It's the amount these people lost.

. . .

8

THE COURT: So I'm wondering if you could discuss a little more this idea that we don't need any sort of evidence to establish, or any additional evidence or an opportunity to allow NUFI to cross-examine or challenge the amount of the settlement. I mean, why is that not something that at least I should listen to, if not even a jury question, should consider?

MR. AMSDEN: That's an interesting question. And depending on how it's framed, [federal District Court] Judge Molloy says, absent fraud, the stipulated judgment is enforceable. You probably noticed the Supreme Court used slightly different language, which said, absent fraud or collusion, the stipulated judgment is enforceable. To allow an insurance company to deny its insureds a defense, we require its insureds and plaintiffs then go and establish the same case on the merits, defeats the purpose of, the rule that says, if you don't provide a defense to your insureds, you can't provide one to yourself.

.   .   .

MR. MUNRO: The reason they had to commission those planned appraisals, the five that John showed you, is because they had to determine how much they would pay out to the planned pensioners. And to do that they have to know exactly what the plan is worth at any given time. So our expert, Sather, simply took those and adopted the most conservative of them as the figure, and that's the only thing that's being -- that was the only basis for what was filed here as a stipulated judgment . . . .

[S]econdly, I want to address Montana's presumption, the settlement was reasonable, because I can tell that that's bothering the court. And as John said, since 1923, we said the settlement is presumed reasonable. There's no burden on the plaintiff to prove it's reasonable, the burden is on the Defendant. The Defendant may attack and show that it's unreasonable. And the inquiry is simply whether the settlement was fraudulent or collusive. This may seem counterintuitive, but there's actually some real wisdom behind the rule for a couple of reasons.

NUFI responded with its own arguments:

MR. MACDONALD: Now, plaintiffs have argued that Montana law has to apply. Interestingly, they submitted, and I heard numerous, from opposing counsel, references in proposed findings they've asked this Court to enter. Notably, in their own proposed findings they asked the court, they [ac]knowledge that it can't be collusive, and that it must be fair and reasonable and within the range of expected jury verdict. That's right from their own proposed findings they've asked you to enter. And they admit

9

the stipulation must be the result of arm's length negotiations. And there are Montana cases like *Sell* that recognize that a reasonableness hearing was required. And Mr. Zadick will address -- he's far more experienced than I am and has knowledge of all the Montana cases, and I'll let him address those . . . .

So the question I think that the court raised and is important is why do they resist it? Why do they resist having a reasonableness or collusion hearing? We think it's because the fact even what we got today, and we haven't taken the discovery in -- although the plaintiffs are asking for 29 million dollar stipulated judgments, I think we've gotten 99 pages of documents produced. 99 pages is the production we've received so far. So we think the stipulations are unreasonable.

Mr. Macdonald also presented arguments as to why the stipulated settlement amount was unreasonable: Three of the other directors sued had settled for 100,000 dollars each; the plaintiffs had previously tried to settle with Davis for 4 million dollars; the suit was improperly brought against Davis and Maxwell as officers or directors of the LLC because the business decision was made by TMSI; and that the majority of the employee shareholders had voted in favor of the transaction. His co-counsel, Mr. Zadick expounded on the law governing reasonableness of stipulated settlements in Montana:

MR. ZADICK: [T]here is guidance from the courts that require[s] a determination of whether or not the amount stipulated to was reasonable.

The 1923 case, *Independent Milk and Cream*, it was revitalized by my case in *Grindheim* where Judge Hatfield cited it. It was also cited in *Keating*, which hasn't been addressed yet today. It's in the briefing. But in *Independent Milk and Cream* the court stated, or the Supreme Court stated, quote, "A recovery suffered in good faith is conclusive as to the amount." The obligation of the indemnitor. Suffered in good faith; what does that mean? Was it fair? Was it reasonable? Was it appropriate? Along comes the *Keating* decision, 1958 [in which the Court determined that "the defendant having denied coverage under the policy, it is in no position to criticize the settlement negotiations effected by plaintiff, unless the amount paid in settlement is excessive."]. . . . So there's the guidance from the Supreme Court. It can't be excessive. It can't be unreasonable. . . .

So there are ways to challenge it and there is evidence on reasonableness already in the record without having had the opportunity to go forward with discovery.

¶12 On January 4, 2013, the District Court granted the plaintiffs' motion for summary judgment and motions to approve stipulations for entry of judgment. Notably, the District Court concluded that Montana case law did not impose any duty upon the court to consider the reasonableness of the amount of the stipulated agreement, and that NUFI's collusion argument was speculative. Nonetheless, the District Court noted that the settlement amount was based upon the estimated value at the time of the TMSI and SuperValu merger, citing to Tim Sather's (Sather) opinion. Although Sather had since retired, his affidavit supporting his opinion and prepared as part of the previous litigation was part of the record before the District Court. Having ruled in favor of the plaintiffs, the District Court, on March 4, 2013, concluded that the plaintiffs were entitled to prejudgment interest on the award against NUFI beginning on January 4, 2013. NUFI appeals and the plaintiffs cross-appeal.

**STANDARDS OF REVIEW**

¶13 This Court reviews de novo issues of law, including interpretation of an insurance contract, decisions on choice of law, and summary judgment rulings. *Newman v. Scottsdale Ins. Co.*, 2013 MT 125, ¶¶ 20-24, 370 Mont. 133, 301 P.3d 348. The decision to grant or deny prejudgment interest is reviewed to determine whether the district court correctly interpreted the law. *DiMarzio v. Crazy Mt. Constr., Inc.*, 2010 MT 231, ¶ 23, 358 Mont. 119, 243 P.3d 718. We review a district court's ruling on a discovery matter

11

for abuse of discretion.  *Hawkins v. Harney*, 2003 MT 58, ¶ 17, 314 Mont. 384, 66 P.3d 305.

**DISCUSSION**

¶14     *1.   Did the District Court correctly conclude that Montana, rather than Washington, law applied in this case?*

¶15     On appeal, NUFI argues that the District Court incorrectly applied Montana, rather than Washington, law.  NUFI relies on *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, 315 Mont. 281, 68 P.3d 703; *Modroo v. Nationwide Mut. Fire Ins. Co.*, 2008 MT 275, 345 Mont. 262, 191 P.3d 389; and *Tucker v. Farmers Ins. Exch.*, 2009 MT 247, 351 Mont. 448, 215 P.3d 1, to argue that Montana law should not control because Montana is only an anticipated place of performance for the insurance contract and factors used to determine which state has the most significant relationship to the issue do not support application of Montana law.  We take this opportunity to clarify the rule governing resolution of conflict of law issues where an insurance contract does not contain a choice-of-law provision.

¶16     Conflicts between an insured and an insurer are generally resolved by contract law.  *Mitchell*, ¶ 16.  In *Mitchell*, we set forth the process for analyzing a conflict of laws issue when an insurance policy does not contain a choice-of-law provision.  We explained that where a contract does not specify the law that will apply to an issue arising from a contract, the matter should be determined using the law of the state which has the "most significant relationship" to the transaction and to the parties, with respect to that

issue.  *Mitchell*, ¶¶ 17-18.  In setting forth this rule, we relied on § 188 of the *Restatement (Second) of Conflict of Laws*, which provides:

> (1) The rights and the duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6 [Choice-of-Law Principles].

*Restatement (Second) of Conflict of Laws* § 188 (1971).  Section 6 of the *Restatement* provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law" and that where there is no such statutory directive, other factors may be considered.  *Restatement (Second) of Conflict of Laws* § 6.  We concluded that § 28-3-102, MCA, provided a statutory directive that Montana law should apply if performance of the contract occurred in Montana.  *See Mitchell*, ¶¶ 18-23.  Section 28-3-102 provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  Interpreting place of performance in the insurance contract, we observed that where an insurance contract designates the place of performance to be any state where a claim arises, performance occurs where the insured obtains judgment.  *Mitchell*, ¶ 20 (citing *Kemp v. Allstate Ins. Co.*, 183 Mont. 526, 533, 601 P.2d 20, 24 (1979)).  Because the claim arose in Montana, performance occurred in Montana, and the statute controlled.  *See Mitchell*, ¶¶ 22-23.

¶17　　We discussed *Mitchell* in *Modroo*.  We did not overrule *Mitchell*, but rather, explained the analytical process where a court determines whether to enforce an

13

insurance contract's choice-of-law provision. *Modroo*, ¶¶ 54-56. Where contracting parties fail to select an effective choice-of-law provision, we explained, § 188 of the *Restatement* governs. Consequently, § 28-3-102, MCA, and our decision in *Mitchell*, control. Before a court may reach such analysis when the insurance contract contains a choice-of-law provision, however, the court must determine whether the state whose law the contract adopts has a materially greater interest in the issue than Montana, pursuant to §§ 187-188 of the *Restatement*. *Modroo*, ¶ 58. Section 187 of the *Restatement* provides in pertinent part:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties *will be applied*, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, *unless either*
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties [sic] choice, or
>
> (b) application of the law of the chosen state would be *contrary to a fundamental policy of a state which has a materially greater interest than the chosen state* in the determination of the particular issue *and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law* by the parties.

*Restatement (Second) of Conflict of Laws* § 187(2) (emphasis added). In *Modroo*, we examined the factors set forth in § 188(2) of the *Restatement* to determine whether Montana had a "materially greater interest" in the issue than Ohio, the insurance contract's chosen state. *Modroo*, ¶¶ 58-59. Those factors are:

> (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

*Modroo*, ¶ 59 (citation omitted). Our observations about the significance of place of performance occurred in the context of that determination. *See Modroo*, ¶ 62. Because we determined that the insurance contract's choice-of-law provision governed in that case, we did not reach *Mitchell* analysis. *See Modroo*,¶ 63.

¶18     *Mitchell* set forth the rule for conflict of laws analysis in the insurance context where the contract at issue does not contain a choice-of-law provision. *Modroo* built on that decision to provide a process for determining whether to enforce a choice-of-law provision, and a process for analysis where a court declines to enforce such a provision. This Court misstated the significance of our decision in *Modroo* in *Tucker*, stating that "[w]e recently adopted the 'most significant relationship' approach contained in the *Restatement (Second) of Conflict of Laws* [§ 188(2)] to determine the applicable state law in determining a choice-of-law conflict in contract disputes." *Tucker*, ¶ 41 (citing *Modroo*, ¶ 50). We then launched into a materially greater interest analysis, even though the contract at issue in *Tucker* did not contain a choice-of-law provision. *Tucker*, ¶¶ 43-47. We analyzed the significance of place of performance as one of the factors in the materially greater interest analysis, even though under *Mitchell*, place of performance should have controlled. *See Tucker*, ¶ 45. This was in error.

¶19     The U.S. District Court for the District of Montana pointed out the problems with our *Tucker* decision in *Great Am. Assur. Co. v. Discover Prop. & Cas. Ins. Co.*, 779 F. Supp. 2d 1158, 1164 (D. Mont. 2011): "Montana's approach to choice-of-law questions in insurance disputes was fairly settled before the Montana Supreme Court's decision in [*Tucker*]." The court explained that straightforward application of *Mitchell* would have

15

resolved the choice-of-law question in *Tucker* in favor of Montana. *Great. Am. Assur. Co.*, 779 F. Supp. 2d at 1167. In applying the factor-based "materially greater interest" test to conclude Idaho law applied, it continued, the *Tucker* Court paradoxically cited *Modroo*, when the application of that test in *Modroo* was premised entirely on the presence of a contractual choice-of-law provision. *Great. Am. Assur. Co.*, 779 F. Supp. 2d at 1168. The court also analyzed *Tucker*'s discussion of the significance of place of performance in its analysis, concluding: "*Tucker* seemingly misapplies the reasoning in *Modroo* and it presents a different road, one less traveled, than the earlier line of cases." *Great. Am. Assur. Co.*, 779 F. Supp. 2d at 1168. We conclude that *Tucker* misapplied the rules from *Mitchell* and *Modroo*, and should be overruled to the extent it suggests that the "materially greater interest" factors supplant the rule from *Mitchell* where an insurance contract does not contain a choice-of-law provision.

¶20 Despite this somewhat-convoluted precedent, however, the trial court in the instant case correctly resolved the choice-of-law issue. The trial court cited to § 28-3-102, MCA, and to *Mitchell* in concluding that Montana law controls this dispute, observing that "[t]he Policy indicates that the place of performance is 'anywhere in the world.'" Accordingly, the trial court reasoned that Montana was an anticipated place of performance and Montana law applied. We agree. Because the contract did not contain a choice-of-law provision, Montana was an anticipated place of performance, and this action involved Montana workers who brought suit in Montana and stipulated to a settlement agreement in Montana, Montana law applies. *See* § 28-3-102, MCA; *Mitchell*, ¶¶ 18-22.

16

¶21 *2. Did the District Court err in concluding that NUFI had breached its duty to defend, without analyzing coverage under the policy?*

¶22 The duty to defend arises when a complaint against an insured alleges facts which, if proved, would result in coverage. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 21, 321 Mont. 99, 90 P.3d 381. It is "independent from and broader than the duty to indemnify created by the same insurance contract." *Staples*, ¶ 21. The duty "can arise when the insurer receives notice of a covered risk through pleadings, discovery, or through notice of final issues declared ready for trial." *Nielsen v. TIG Ins. Co.*, No. CV 05-47-M-DWM, 2006 U.S. Dist. LEXIS 49002, *6 (D. Mont. May 4, 2006) *adopted at* 442 F. Supp. 2d 972 (D. Mont. May 31, 2006). "'Where a complaint alleges facts which represent a risk outside the coverage of the policy but also avers facts which, if proved, represent a risk covered, the insurer is under a duty to defend.'" *Staples*, ¶ 21 (quoting *Atcheson v. Safeco Ins. Co.*, 165 Mont. 239, 245-46, 527 P.2d 549, 552 (1974)).

¶23 Policy exclusions must be construed narrowly in recognition of the fundamental protective purpose of an insurance policy and the obligation of the insurer to provide a defense. *Staples*, ¶ 22. The insurer must construe factual assertions from the perspective of the insured rather than from its own perspective. *Staples*, ¶ 22. Unless there exists an "unequivocal" demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend. *Staples*, ¶ 22. It is well-established that where an insurer refuses to defend a claim and does so unjustifiably, the insurer is estopped from denying coverage and becomes liable for defense costs and judgments. *See Staples*, ¶ 27 (listing cases).

17

¶24 In other words, where an insurer refuses to defend its insured, it does so at its peril. *See Independent Milk & Cream Co. v. Aetna Life Ins. Co.*, 68 Mont. 152, 157, 216 P. 1109, 1110 (1923) ("The refusal of the insurer to defend the action was unjustified and it did so at its peril."). For this reason, we have previously recommended that where an insurer believes it is not required to provide a defense under the policy, the prudent course of action is to defend the insured under a reservation of rights and file a declaratory judgment action to discern coverage. *See State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 37, 372 Mont. 191, 312 P.3d 403; *Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 102-03, 861 P.2d 895, 902 (1993); *see also Newman*, ¶ 71 (providing that the insurer could have participated in mediation or settlement negotiations, while, in the meantime, seeking a declaratory judgment that it had no duty of indemnification under the policy); *Staples*, ¶ 28 ("If [the insurer] wished to dispute coverage, it could have defended Staples under a reservation of rights and later sought judicial determination through a declaratory judgment action to determine whether coverage existed.").

¶25 "Montana case law clearly provides that where the insurer refuses to defend a claim and does so unjustifiably, that insurer becomes liable for defense costs and judgments." *Staples*, ¶ 20 (internal quotation omitted); *see Lee v. USAA Cas. Ins. Co.*, 2004 MT 54, ¶ 19, 320 Mont. 174, 86 P.3d 562. Moreover, "[an insurer] cannot escape liability by declaring in advance of trial that the claim for damages is not one covered by the policy." *Independent Milk*, 68 Mont. at 157, 216 P. at 1110. Rather, an insurer who breaches the duty to defend is liable for the full amount of the judgment, including

18

amounts in excess of policy limits. *Nielsen*, 2006 U.S. Dist. LEXIS 49002 at \*29. We have recently recognized the "majority rule" that:

> "[A] pretrial stipulated judgment may be enforceable against the defendant's liability insurer if the insurer breaches its contractual obligation to defend the insured. Under the majority view, when an insurer improperly abandons its insured, the insured is justified in taking steps to limit his or her personal liability."

*Freyer*, ¶ 34 (quoting *Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 432-33 (Colo. 2008) (en banc)).

¶26 NUFI claims that the District Court was required to analyze policy coverage before concluding NUFI had breached a duty to defend. First, NUFI contends that the District Court's determination that the instant state action is "the same" as the federal suit is erroneous and constitutes reversible error. Next, NUFI argues that even if the two cases were the same, the District Court still erred by failing to analyze coverage. NUFI attempts to persuade us to impose a requirement that a district court must analyze policy coverage before finding breach of a duty to defend. The Dissent would accept NUFI's invitation. Our case law, however, makes clear that the threshold question, instead, is whether the complaint against the insured alleges facts that, if proven, would trigger policy coverage. *See Staples*, ¶ 21. "[I]f there is any dispute as to the facts relevant to coverage, those factual disputes must be resolved in favor of coverage." *Staples*, ¶ 24.

¶27 In effect, it does not matter whether the claims against Davis and Maxwell were the same in both the federal and state litigation—all that matters is whether NUFI was on notice that the Policy was potentially implicated. If NUFI was on notice that the Policy was potentially implicated, the duty to defend was triggered. *See Staples*, ¶¶ 20-24. As

19

the District Court recognized, beginning in 2007, NUFI saw that the Policy was implicated. The District Court explained "[w]hen the Plaintiffs filed their amended complaint in federal court alleging claims against Davis and Maxwell in their capacity as officers and directors, the same claims at issue in this state court action, National Unions' [sic] duty to provide a defense for its insureds arose *as there was a potential for coverage under the policy*." (Emphasis added). NUFI defended Davis and Maxwell throughout the federal litigation. Ms. Lermond's letter confirms that after the state suit was filed, NUFI, although aware that the Policy was still potentially implicated, concluded that a Policy exclusion had been triggered, which precluded further coverage. The letter states: "[B]ased on the Complaint filed on May 21, 2010, there is *no longer* any coverage for this matter under the Policy." (Emphasis added). Although the letter invited counsel to provide factual or legal information to refute NUFI's coverage position, McPhee observed in a subsequent communication that pursuant to this Court's decision in *In re the Rules of Professional Conduct*, 2000 MT 110, 299 Mont. 321, 2 P.3d 806, the insurer was not his client and he was not obliged to provide the insurer with "input and corroboration" for its coverage analysis. NUFI did not respond to attorneys' communications following Lermond's letter, did not pay attorney's fees, and thereby declined to continue providing a defense. If there was any doubt as to the significance of NUFI's actions, that doubt was dispelled by the October 28, 2010 letter to McPhee from Chartis, in which the carrier unequivocally stated that "since there is no coverage, [NUFI] is not going to continue to pay the costs of defense of this matter." Finally, the insurer's recognition that the Policy was potentially implicated was cemented when, after the first

20

stipulated settlement had been filed, it receded from its coverage position and agreed to defend under a reservation of rights. These facts show that NUFI saw that the Policy was implicated, but refused to provide a defense and thereby breached its duty to defend.

¶28 If we were to hold the District Court in error for failing to analyze coverage, as the Dissent urges, we would be providing insurers with an avenue to circumvent the clear requirement imposed by our precedent that where the insurer believes a policy exclusion applies, it should defend under a reservation of rights and seek a determination of coverage through a declaratory judgment action. Where an insurer believes a policy exclusion precludes coverage, our case law is clear as to the prudent process to follow. *See e.g. Staples*, ¶ 28. NUFI, instead, took its chances by refusing to defend Davis and Maxwell in the state action. NUFI cannot avoid liability for the stipulated settlement agreement by attempting to convince this Court it was necessary to analyze coverage under the Policy before determining it had breached the duty to defend—when, as we have explained many times before, the proper process to seek such analysis is through a declaratory judgment action. Many of the arguments NUFI and the Dissent urge we address call for analysis that would have been proper had NUFI adhered to the correct process and filed a declaratory judgment action to discern coverage—but they are not proper at this stage of the proceedings.

¶29 *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, 326 Mont. 174, 108 P.3d 469, provides no support for NUFI's argument that the District Court was required to analyze coverage before it could find a duty to advance defense costs. In that case, this Court indeed affirmed a district court's decision that a claim was not covered

21

by a policy and no duty to defend arose—*where the insurer had already defended and indemnified the insured under a reservation of rights*. *Travelers Cas. & Sur. Co.*, ¶ 45. *Travelers Cas. & Sur. Co.* does not support a contention that, where an insurer invokes a policy exclusion in declining to defend an insured, a district court must analyze coverage before determining the insurer has breached its duty to defend. Only when there has been an "unequivocal" demonstration that a claim is not within the policy coverage is such analysis relevant to a district court's determination. *See Staples*, ¶ 22. That is not the case here.

¶30 The Dissent also cites *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 2008 MT 411, ¶¶ 14-33, 347 Mont. 267, 198 P.3d 796, and *Grindheim v. Safeco Ins. Co. of Am.*, 908 F. Supp. 794, 801-08 (1995), to support its position that a court must analyze policy coverage before finding an insurer is under a duty to defend. Although in those cases the courts elected to analyze policy coverage, such analysis is not necessarily required. In this case, the insurer recognized that the complaint potentially implicated the Policy when it concluded the Policy "no longer" offered coverage for Davis and Maxwell because of the "Insured v. Insured Exclusion." It again recognized the Policy was implicated when it revised its coverage position and elected to defend under a reservation of rights, following the first stipulation. Where the insurer itself recognized the complaint potentially implicated the Policy and required it to provide a defense, we can see no need for further analysis to conclude the duty to defend was invoked. The District Court's determination that a duty to defend arose from the contract language was adequate and no further analysis of policy coverage was necessary.

22

¶31 Finally, the Dissent concludes that fact issues preclude a finding that NUFI breached the duty to defend because it effectively sought a coverage determination when it filed its motion to dismiss for lack of coverage, and because Maxwell and Davis were represented at all times. NUFI agreed *only* to pay for a motion to dismiss, however, and while that motion was pending, failed to defend its insureds or advance defense costs. Unlike in *State Farm Fire & Cas. Co. v. Schwan*, 2013 MT 216, 371 Mont. 192, 308 P.3d 48, where the issue was whether an insurer had breached a duty to defend where another insurer was already providing a defense, the attorneys were not actually being paid by (or their clients being reimbursed by) an insurer in this matter. Even if we were to treat an insurer's motion to dismiss as a declaratory judgment action—which we do not—NUFI still would have breached the duty to defend by failing to defend under a reservation of rights while awaiting a judicial determination of coverage.

¶32 NUFI also argues that the District Court erred in finding coverage by estoppel. Specifically, NUFI argues that since Davis and Maxwell were defended at all times, coverage by estoppel should not apply. NUFI further contends that the cases on which the District Court relied are distinguishable from the facts at issue here, and that we should not sanction excess judgments without any consideration of bad faith. Finally, NUFI asserts that the District Court should have taken into account the plaintiffs' "unclean hands" in fashioning equitable relief.

¶33 The District Court found, and we agree, that NUFI unjustifiably refused to continue to provide a defense to Davis and Maxwell. Although NUFI was on notice that the Policy was potentially implicated, it made very clear in its August 5, 2010, and

23

October 28, 2010, letters that it would not defend Davis and Maxwell. It was not until November 19, 2010, that NUFI agreed to advance defense costs under a reservation of rights. By that point, however, Davis had already stipulated to a settlement and Maxwell was on the way to reaching an identical stipulation. Moreover, in the instant litigation, NUFI has admitted that the understanding of the corporate structure upon which it originally based its refusal to defend was in error. Since NUFI unjustifiably refused to defend, it is now estopped from denying coverage. *Staples*, ¶ 28. Our case law does not require consideration of additional factors to determine coverage exists when an insurer has breached its duty to defend. NUFI's argument concerning bad faith in the excess judgment is encompassed in the discussion below.

¶34    *3. Did the District Court err in denying NUFI a hearing and discovery on reasonableness and collusion related to the stipulated settlements?*

¶35    NUFI argues that the District Court erred by approving the 29 million dollar award without allowing NUFI a hearing or discovery on whether the stipulations were reasonable and non-collusive. NUFI argues that the District Court misread applicable case law in concluding there was no independent duty on the court to conduct a reasonableness hearing and cites numerous cases from Montana and other jurisdictions to support its contention that a reasonableness hearing was required. NUFI further argues that the Sather report from which the figure is drawn is not competent evidence and claims other numbers presented into evidence by the plaintiffs cast doubt on the accuracy of Sather's valuation. NUFI's challenges amount to allegations that the District Court erred procedurally by not holding a separate reasonableness hearing and substantively by

24

approving the stipulated settlement amount, because it was unreasonable. NUFI also contends the settlement was unreasonable because it was improperly collusive. We address each argument in turn.

¶36   *a. Procedural requirement for a reasonableness hearing.*

¶37   At the December 5, 2012, summary judgment hearing, NUFI argued that discovery and a reasonableness hearing were required to discern the value of the plaintiffs' loss. NUFI emphasized that the settlements were unreasonable because "although the plaintiffs are asking for 29 million dollar stipulated judgments, I think we've gotten 99 pages of documents produced." NUFI's counsel, Mr. Zadick, extensively discussed Montana cases concerning reasonableness, most of which he had been involved with in one way or another. The District Court determined that it was not required to hold a separate hearing on reasonableness.

¶38   Even aided by Mr. Zadick's thorough review, we cannot identify any instance in which we, or any other court applying Montana law, have held that a court *must* hold a reasonableness hearing related to a stipulated settlement agreement where an insurer has breached its duty to defend. In *Independent Milk*, we declined to require an insured to litigate its claim and pay the judgment before seeking indemnification, where the insurer had breached the duty to defend. *Independent Milk*, 68 Mont. at 158-59, 216 P. at 1111. Following that decision, in *Keating v. Universal Underwriters Ins. Co.*, 133 Mont. 89, 100, 320 P.2d 351, 357 (1958), we concluded that where an insurance company had denied coverage under the policy, it was "in no position to criticize the settlement negotiations effected by plaintiff," unless the amount paid was excessive—which the

25

insurer did not claim. *State Farm Fire & Cas. Co. v. Howerton*, No. CV-89-036-GF, 8 M.F.R. 115 (D. Mont. Nov. 27, 1990), is inapposite because there, the insurer had provided a defense under a reservation of rights and sought to invalidate the agreement in a subsequent action. In *McCarvel v. Ins. Co. of N. Am.*, No. CV-89-176-GF, 9 M.F.R. 481 (D. Mont. 1991), the U. S. District Court for the District of Montana elected to hold a hearing to permit the insurer to establish coverage and reasonableness, but never stated that our precedent requires such a course. In *Grindheim*, 908 F. Supp. at 808-09, the federal district court declined to grant partial summary judgment where argument and evidence supporting some of the monetary relief sought from the insurance company was "at best, . . . rudimentary." In *Nielsen*, a hearing on the plaintiffs' damages was held pursuant to a settlement agreement, but the federal district court specifically concluded that "Montana law does not require an independent review of reasonableness or collusion." *Nielsen*, 2006 U.S. Dist. LEXIS 49002 at *35. Our review of the applicable precedent leads us to conclude that a trial court may hold a hearing to establish whether a stipulated judgment like the one at issue here is reasonable or collusive—*but failing to do so is not procedural error*. Whether a hearing is required to evaluate the stipulated settlement agreements' substantive reasonableness in this case is addressed below.

¶39 *b. Substantive reasonableness.*

¶40 Although we have not procedurally required a reasonableness hearing following a stipulated settlement resulting from a breach of the duty to defend, we do require such settlements to be reasonable. Section 27-1-302, MCA, Montana's general damages statute, provides "[d]amages must in all cases be reasonable, and where an obligation of

26

any kind appears to create a right to unconscionable and grossly oppressive damages contrary to substantial justice, no more than reasonable damages can be recovered." Substantively, our precedent has recognized this principle beginning with the seminal *Independent Milk* decision, where we upheld the settlement at issue after recognizing that it was "fair and reasonable." *Independent Milk*, 68 Mont. at 157, 216 P. at 1110. Following that decision, in *Keating*, 133 Mont. at 100, 320 P.2d at 357, we suggested that where a defendant insurance company breaches the duty to defend it might criticize a settlement paid if the settlement was excessive. And in the distinguishable, yet still applicable, case, *Wash. Water Power Co. v. Morgan Elec. Co.*, 152 Mont. 126, 138, 448 P.2d 683, 689 (1968), we explained that:

> Where an insurer is obligated to defend, refuses to do so after notice, makes no protect [sic] against settlement by the insured, and *fails,* [sic] *to show that the settlement was unreasonable*, the insured is entitled to summary judgment as a matter of law against the insurer for the amount paid in good faith in settlement by the insured. [*Boutwell v. Employers' Liability Assurance Corp.*, 175 F.2d 597 (5th Cir. 1949)]. We perceive no reason for a different result here as between insurers for an indemnitor and indemnitee *in the absence of proof that the settlement was unreasonable*. Where, as here, the indemnitor and his insurer, after notice, refuse to defend the indemnitee; breach the indemnity agreement; refuse to participate in settlement negotiations or defend after demand; know the amount of the settlement and make no objections; the indemnitee is entitled to judgment as a matter of law in the amount of any settlement paid by it in good faith *absent proof that the settlement is unreasonable*.

(Emphasis added). Most recently, in *Freyer*, we recognized the concerns that the insured has little incentive to minimize the settlement amount in these types of negotiations and that there is no assurance that the settlement represents a proper calculation of actual

damages. *See Freyer*, ¶ 36.[1] In other words, we have recognized the opportunity for mischief in settlement negotiations where the insurer has declined involvement—which may be checked by judicial review of whether the settlement amount stipulated to is reasonable. Indeed, plaintiffs seeking court approval of stipulated settlements have been advised to obtain judicial review of the settlements' reasonableness through a reasonableness hearing. Joe Bottomly & Amy Poehling Eddy, *What you Need to Know About Stipulated Judgments, Covenants Not to Execute, and Assignments*, Trial Trends 28, 31 (Summer 2005).

¶41 The precedent defining the parameters of the reasonableness inquiry is scant and we take this opportunity to clarify the process for determining reasonableness of a stipulated settlement agreement when the insurer requests such review. As plaintiffs' counsel Professor Greg Munro has pointed out, in *Independent Milk*, this Court cited to a statute for the principle that a stipulated settlement is presumed reasonable and the burden is on the insurer to rebut that presumption. Greg Munro, *The Insured's Right to Settle When the Insurer is Defending Under Reservation of Rights*, Trial Trends 15, 24-25 (Summer 2012) (citing *Independent Milk*, 68 Mont. at 158, 216 P. at 1111). The federal district court in *McCarvel* echoed that principle: "[T]he burden of establishing the unreasonableness of the underlying settlement rests with [the breaching insurer], given its

---

[1] Although we recognize that the concerns emphasized in *Freyer* are generally applicable in cases involving stipulated settlement agreements, we also wish to emphasize that *Freyer* is distinguishable from the instant controversy because, in that case, the insurer provided a defense.

28

breach of the duty to defend under the subject policies." *McCarvel*, 9 M.F.R. at 491.[2]

After a plaintiff has moved to have a stipulated settlement approved, where the insurer contends a settlement is unreasonable or excessive, as it does here, *see Keating*, 133 Mont. at 100, 320 P.2d at 357, the insurer must set forth specific facts tending to demonstrate that the settlement amount may be unreasonable and request the district court to hold a reasonableness hearing. Where, as here, the court declines to hold a reasonableness hearing and unreasonableness is argued as a fact issue precluding summary judgment, the insurer must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *See Celotex Corp v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). If the insurer carries this burden, there is a factual issue which precludes entry of summary judgment upon a claim for payment of a settlement amount, and a hearing on reasonableness should be held. *See McCarvel*, 9 M.F.R. at 491.

¶42    So, the question here is whether a reasonableness hearing is required, given NUFI's argument that there is a factual basis to challenge the reasonableness of the settlement amount. NUFI continually argued the reasonableness issue throughout the

---

[2] In *McCarvel*, the federal district court relied on a treatise to reach this result, explaining that "[i]n the same view, when an insurer refuses to defend a claim within the policy coverage, and the insured settles, the insurer faces the burden of showing that the settlement does not represent a legal obligation within the policy or that the amount of settlement was unreasonable." *McCarvel*, 9 M.F.R. at 490 (citing 1A Long, *The Law of Liability Insurance* § 5.22, 5-159 (1990)). This is not a fully accurate statement of the law in Montana. We have explained that the question in duty to defend cases is not whether a claim is within the policy coverage, or whether the settlement represents a legal obligation within the policy, but whether the complaint alleges facts which, if proved, would give rise to policy coverage. *Staples*, ¶ 21. While we agree with the result and process in *McCarvel*, we endorse the court's reasoning only cautiously.

proceedings. In its initial request for an evidentiary hearing, NUFI argued that the amount of the settlements was not supported by competent evidence and demanded a jury trial. In its brief opposing the plaintiffs' motions to approve the stipulations for entry of judgment, NUFI argued that the 29 million dollar figure was unreasonable because it was based only on "unsworn opinions of experts whom plaintiffs retained and paid and who have never been cross-examined by [NUFI's] counsel." NUFI argued that the plaintiffs misconstrued Sather's report to suggest that 29 million dollars was a reasonable or viable valuation. It asserted: "Sather analyzes lots of numbers, but nowhere does he opine what damages the ESOP or the corporation suffered as a result of the joint venture." It also pointed out that no buyer had been identified at the price TMSI's financial advisor, Zachary Scott, suggested the corporation might bring if sold to another chain—the figure on which the 29 million dollars is based. At the summary judgment hearing NUFI again raised the argument that the stipulated settlement amount was not reasonable:

> So the question I think that the court raised and is important is why do . . . [the plaintiffs] resist having a reasonableness or collusion hearing? We think it's because the fact even what we got today, and we haven't taken the discovery in -- although the plaintiffs are asking for 29 million dollar stipulated judgments, I think we've gotten 99 pages of documents produced. 99 pages is the production we've received so far. So we think the stipulations are unreasonable.

NUFI continues to raise these arguments on appeal. NUFI also reiterates other arguments it previously raised that reflect on reasonableness: That the settlement amount is magnitudes greater than the amount for which the plaintiffs had settled with other directors and the amount the plaintiffs had offered Davis himself in settlement, and that

the plaintiffs' own numbers reveal that Zachary Scott opined that the value of the corporation as a standalone entity was 11 million dollars.

¶43 The District Court concluded it was not required to conduct a reasonableness hearing and thus, devoted only slight analysis to the reasonableness of the stipulated settlements. In concluding that NUFI was liable for the 29 million dollar stipulated settlement agreement, the court reasoned:

> At the time Davis and Maxwell entered into the stipulated judgments, they were left without a defense and were acting within their own best interests. Moreover, the $29 million judgment is based upon the estimated value at the time of the [TMSI] and SuperValu merger.

The court cited to Sather's report to support the amount of the settlement. The court did not, however, address any of the arguments NUFI raised that would tend to bear upon the reasonableness of the 29 million dollar settlement amount.

¶44 We conclude that further consideration is necessary to determine whether the 29 million dollar stipulated settlement is reasonable, in light of the questions NUFI has raised. At the very least, NUFI's arguments are sufficient to raise a genuine issue of material fact as to the reasonableness of the settlement amount, precluding summary judgment, on this record. We therefore reverse the District Court's entry of summary judgment to the extent that the order approved the stipulations for entry of judgment in the sum of 29 million dollars, and remand for the District Court to hold a hearing focused on the reasonableness of the settlement amount. So as to inform its reasonableness determination, the District Court may set parameters of the hearing, and determine in its discretion whether and to what extent any further discovery is necessary prior to the

hearing. The burden of establishing the unreasonableness of the stipulated judgment shall rest with NUFI. *See McCarvel*, 9 M.F.R. at 491 (burden of establishing unreasonableness of a stipulated settlement rested with insurer where insurer had breached the duty to defend).

¶45 *c. Collusion.*

¶46 As to its contention that the settlement was collusive, NUFI's primary legal argument is that Davis and Maxwell had no incentive to minimize the settlement amount, and, consequently, the settlement was per se unreasonable because it was improperly collusive. NUFI relies mostly on Washington law to argue that, separate from reasonableness, an insurer may challenge a stipulated settlement as improperly collusive. NUFI argues that Montana law also requires a court to consider collusion because in *Howerton*, the federal district court found a consent judgment collusive where the amount of the consent judgment was three times a prior settlement offer. NUFI further points to our decision in *Freyer*, for the concern about the insured's lack of incentive to minimize the settlement amount. To support its characterization of the settlement as collusive, NUFI argues that Davis stood to benefit from a judgment in favor of TMSI, and that the amount of the stipulated settlement agreement was over seven times what the plaintiffs had previously offered to accept from Davis as a settlement amount. NUFI also emphasizes the timing of the entry of the stipulated settlements.

¶47 Neither Montana authority, nor the facts to which NUFI directs our attention, persuade us that the District Court improperly disposed of NUFI's collusion argument. Montana precedent does not require a court to consider whether a stipulated settlement is

32

collusive where the insurer has breached the duty to defend. *Nielsen*, 2006 U.S. Dist. LEXIS 49002 at **32-33. Montana's approach to settlement agreements under such circumstances recognizes the objective of "creating strong disincentives against default in the performance of the duty," *see Restatement (Second) of Judgments* § 58, cmt. a (1982); this is less true where the insurer has provided a defense. *See Freyer*, ¶¶ 26, 30, 37, 41 (discussing enforceability of stipulated settlement agreements where the insurer has provided a defense as compared to where the insurer has not provided a defense). In both *Howerton* and *Freyer*, it was significant that the insurer had provided a defense under a reservation of rights. *See e.g. Freyer*, ¶ 37. Thus, those cases do not support NUFI's assertion that it is necessary to consider collusion where, as here, no evidence of collusion exists.

¶48 The facts NUFI brings to our attention do not rise to the level of collusion. The term "collusion" implies the existence of some sort of agreement aimed at defrauding another or otherwise breaking the law. *See Black's Law Dictionary* 281 (Brian Garner ed., 8th ed., West 2004). For the settlement agreements to be collusive, NUFI would have to point to evidence of an effort towards wrongdoing between the plaintiffs and Davis and Maxwell. As the District Court explained:

> Although [NUFI] argues that there was collusion between Plaintiffs' counsel and counsel for Davis and Maxwell in the drafting and entering into of the stipulated judgments, this Court finds [NUFI's] argument speculative. The issues raised by [NUFI] of the stipulations being entered into relatively quickly after [NUFI's] August 5, 2010 letter, or that Davis and Maxwell "negotiated" the stipulated judgments with Plaintiffs, or that Davis stood to be one of the largest beneficiaries of the stipulated judgment, or that [NUFI] had rethought its denial and agreed to defend, do not rise to the level of collusion.

33

We agree that NUFI's arguments regarding the timing and negotiation of the settlement agreement fail to establish wrongdoing. We can only echo the sentiment of the federal court in *Nielsen*:

> [T]he Court can only say, so what. What Defendant has described is nothing other than the usual custom and practice in which parties engage in Montana as a consequence of an insurer's failure to defend.

*Nielsen*, 2006 U. S. Dist. LEXIS 49002 at *38. With regards to potential financial benefit to Davis from the settlement, Davis had assigned all his rights in any judgment to the plaintiffs as part of the settlement agreement. NUFI's initial refusal to provide a defense was enough to justify Davis's and Maxwell's speedy decisions to protect themselves by stipulating to settlement agreements with the plaintiffs; NUFI cannot call that decision collusive simply because it became conscious of its own exposure and changed its tune. Finally, the arguments NUFI advances based on *Howerton* and *Freyer* regarding the settlement amount do not, without more, establish collusion, and can be addressed through the reasonableness inquiry. The settlement amount is supported by a valuation that was executed before the instant proceeding began, and there is no evidence or allegation that Davis and Maxwell somehow participated in determining the amount. Without some fact showing wrongdoing, the facts NUFI highlights speak to reasonableness, not collusion.

¶49 The Dissent proposes that the settlement was collusive because of the nature of the Directors and Officers policy at issue and because NUFI has alleged that the plaintiffs improperly manipulated their pleadings in an attempt to create coverage. The fact that the Policy was a Directors and Officers policy does not, as the Dissent suggests, warrant

34

the conclusion that the settlement was improperly reached in this case. The insinuation that, because of the type of policy, there was some incentive for Davis and Maxwell to settle the case does not amount to a material fact suggesting they did so here. The plaintiffs' choice not to include the LLC as a defendant, whether strategic or not, does not in our view constitute improperly manipulating the pleadings in an attempt to "manufacture coverage." This case is distinguishable from *Burns v. Underwriters Adjusting Co.*, 234 Mont. 508, 509-10, 765 P.2d 712, 712-13 (1988), in which, although the complaint alleged negligence, a covered risk under the policy, the fact that the wrongdoer had been convicted for an intentional crime in connection with the act at issue clearly showed that the act was intentional and was not covered. The plaintiffs here have at all times alleged that their action implicated a risk that was covered under the Policy—liability Davis and Maxwell incurred in their capacities as directors or officers of Tidyman's LLC—as the insurer itself repeatedly recognized. The Dissent mistakes insinuations for genuine issues of material fact.

¶50 We conclude that genuine issues of material fact regarding reasonableness preclude summary judgment on the amount of the stipulated settlements. Accordingly, we reverse the judgment on the stipulated settlements and remand this matter for a hearing to determine whether the 29 million dollar stipulated settlement amount is reasonable. Although we can envision a case where a collusion inquiry might be relevant, the facts NUFI has raised do not require such an inquiry here. NUFI's arguments regarding the settlement amount will be addressed through the reasonableness inquiry.

¶51 *4. Did the District Court err by awarding pre-judgment interest, or in its determination of when the interest began accruing?*

¶52 Section 27-1-211, MCA, provides that "[e]ach person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover that is vested in the person upon a particular day is entitled also to recover interest on the damages from that day . . . ." The District Court, in entering judgment against NUFI in the amount of 29 million dollars, concluded that the plaintiffs were entitled to pre-judgment interest beginning on January 4, 2013, the date when it granted the plaintiffs' motion for summary judgment and motions to approve the stipulated settlement agreements. The plaintiffs, on cross-appeal, contend that they were entitled to pre-judgment interest beginning on November 5, 2010, when the first stipulation was filed.

¶53 As NUFI points out, however, a party is entitled to pre-judgment interest only when three criteria are met:

> (1) the existence of an underlying monetary obligation; (2) the amount of recovery is certain or capable of being made certain by calculation; and (3) the right to recover the obligation vests on a particular day.

*DiMarzio*, ¶ 58. Here, none of these criteria could have been satisfied until the District Court approved the stipulated settlement agreements. The settlement agreements themselves provided they would not become effective until they were approved by the court. The amount of recovery was not certain or capable of being made certain until court-approved, either. And finally, if found to be ineffective, the stipulations could not have vested the plaintiffs with a legal right to recovery. We conclude that the District

36

Court correctly determined the plaintiffs were entitled to pre-judgment interest beginning on January 4, 2013, when the court approved the stipulated settlement agreements and entered judgment in the plaintiffs' favor.

**CONCLUSION**

¶54 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice Laurie McKinnon, concurring in part and dissenting in part.

¶55 In my opinion, the District Court and this Court have erred (1) in finding that NUFI had a duty to defend, without considering whether the plaintiffs' complaint "alleges facts, which if proven, would result in coverage," *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 21, 321 Mont. 99, 90 P.3d 381, and (2) in granting summary judgment although there are genuine issues of material fact as to whether NUFI breached a duty to defend. I believe the District Court and this Court have failed to recognize that an insurer's assertion of an opinion regarding the existence of coverage does not equate to an insurer's outright refusal to defend. NUFI expressed an opinion, based on the facts

alleged in the plaintiffs' complaint, that coverage did not exist. In so doing, NUFI did not necessarily breach a duty to defend. In fact, Davis and Maxwell were represented by counsel throughout the disputed timeframe. Additionally, it is my view that this Court has also failed, in a fundamental respect, to appreciate the difference between a type of insurance colloquially known as directors and officers insurance, where the "insured v. insured" exclusion is a cornerstone of the policy, versus the more common form of casualty insurance, such as automobile and homeowners insurance. Finally, basic principles of due process require a hearing to determine not only the reasonableness of the stipulated settlement, but also whether it was made in good faith—that is, absent fraud and collusion. For all of these reasons, I dissent as to Issue 2 and subparts (a) and (c) of Issue 3.[1]

¶56　It is well established in Montana that an insurer's duty to defend its insured arises when the insurer, through reference to pleadings, discovery, or final issues declared ready for trial, has received notice of facts representing a risk covered by the terms of the insurance policy. *Grindheim v. Safeco Ins. Co. of Am.*, 908 F. Supp. 794, 798 (D. Mont. 1995) (citing cases); *Staples*, ¶ 20. The insurer must look to the allegations of the complaint to determine whether coverage exists under the policy, thus giving rise to the insurer's duty to defend. *Farmers Union Mut. Ins. Co. v. Rumph*, 2007 MT 249, ¶ 14, 339 Mont. 251, 170 P.3d 934; *Graber v. State Farm Fire & Cas. Co.*, 244 Mont. 265, 270, 797 P.2d 214, 217 (1990). The insurer is required to defend "unless there exists an

---

[1] I concur in the Court's decision as to Issues 1 and 4, and in the Court's holding under subpart (b) of Issue 3.

unequivocal demonstration that the claim against the insured does not fall under the policy's coverage." *Rumph*, ¶ 14. Where the insurer refuses to defend a claim and does so unjustifiably, the insurer becomes liable for defense costs and judgments. *Lee v. USAA Cas. Ins. Co.*, 2004 MT 54, ¶ 19, 320 Mont. 174, 86 P.3d 562.

¶57    In spite of this clear precedent, the Court holds—without examining whether the plaintiffs' complaint alleged facts representing a risk covered by the terms of the Policy—that NUFI had a duty to defend. Opinion, ¶¶ 27-30. In essence, we deny the insurer the right to contest a duty to defend in these proceedings by holding that the insurer should have brought a separate action to determine coverage. Opinion, ¶¶ 24, 28. We thus foreclose the insurer from having a judicial determination of the existence of a duty to defend, which is distinct from a duty to indemnify, based on an actual examination of the allegations of the complaint and the terms of the Policy. *Staples*, ¶ 21. The complaint in these proceedings was filed in May 2010 in the Fourth Judicial District Court—a state court. It is not the complaint filed in federal court in 2007, which grew into the *Nagrone* litigation. The Court nevertheless finds, without any examination of the Policy or the instant complaint, that NUFI's defense in the *Nagrone* litigation "potentially implicated" the Policy in the present proceedings. Opinion, ¶ 27. I disagree with what appears to be a new standard for determining the existence of a duty to defend when we previously have been clear that a duty to defend may be found only after examining the allegations of the particular complaint to determine whether facts have been alleged representing a risk covered by the terms of the insurance policy.

¶58 The plaintiffs contend that their May 2010 complaint alleged Davis and Maxwell engaged in "wrongful conduct," as defined in the Policy, and that this triggered the duty to defend. They claim that NUFI does not dispute the conduct of Davis and Maxwell was wrongful and that NUFI is therefore estopped from denying a duty to defend because NUFI defended Davis and Maxwell in the *Nagrone* litigation.

¶59 NUFI asserts that the *Nagrone* litigation is not the same as the present litigation and that the District Court erred in assuming otherwise. NUFI explains that the *Nagrone* lawsuit was brought against TMSI and TMSI's officers and directors, including Davis and Maxwell, by former TMSI employees alleging that the actions leading to the 1998 merger violated federal law (ERISA). NUFI paid TMSI's defense costs in the *Nagrone* litigation, subject to a reservation of rights. NUFI explains that TMSI is a plaintiff in the current action and is suing Davis and Maxwell in their capacities as officers and directors of Tidyman's, LLC. Moreover, the current action is between insureds (thereby invoking one of the exclusions to coverage) because (1) five of the plaintiffs here are directors of the insured (Tidyman's, LLC) and they have sued defendants Davis and Maxwell, who are also directors of the LLC; and (2) plaintiff TMSI, as a 60 percent security holder of the LLC, brought this lawsuit against two directors of the LLC (Davis and Maxwell) with the assistance of other insureds (five plaintiffs who are also directors of the LLC). NUFI further argues that the factual basis of the complaint is, in substance, a claim against TMSI's officers and directors for having allowed the LLC to be formed, and not the officers and directors of the insured LLC. In other words, NUFI asserts that the wrongful conduct forming the basis of the plaintiffs' claims occurred prior to the formation of the

40

insured LLC and was committed by officers and directors of TMSI, rather than officers and directors of the LLC. Clearly, NUFI had no duty to defend against claims premised on wrongful conduct committed by individuals before its insured, the LLC, even existed.

¶60 "The determination of whether the allegations of a complaint assert facts which represent a risk potentially covered by the terms of an insurance contract necessarily calls upon the court to construe the terms of the insurance contract." *Grindheim*, 908 F. Supp. at 800. The construction of insurance contracts in Montana is governed by the general law of contract interpretation set forth in Title 28, chapter 3, MCA, and the caselaw that has developed thereunder in the context of insurance. *Grindheim*, 908 F. Supp. at 800. Absent an ambiguity, the language of an insurance contract governs its interpretation. *Grindheim*, 908 F. Supp. at 800; §§ 28-3-303, -401, MCA. When there is a dispute as to the existence of a duty to defend, the court must "compare[ ] allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered.'" *Staples*, ¶ 22. In so doing, the court "must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Staples*, ¶ 22.

¶61 In spite of this precedent, the Court fails to "compare[ ] allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered.'" *Staples*, ¶ 22. The Court does not even refer to the terms and provisions of the Policy or the allegations in the complaint, holding instead that "NUFI saw that the Policy was implicated. . . . NUFI defended Davis and Maxwell

41

throughout the federal litigation." Opinion, ¶ 27. This is the crux of the Court's analysis on the existence of the duty to defend, and it is premised on the false notion that the pleadings in the federal litigation were "the same" as the pleadings in the present litigation. Opinion, ¶¶ 4, 27.

¶62 NUFI explains that the Policy is a directors and officers (D & O) policy with an exclusion to coverage when an insured brings a lawsuit against another insured. The pertinent provisions are set forth in Clause 8 and Endorsement 13. Clause 8, concerning defense costs, states in relevant part:

> The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.
>
> Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer . . . . This right [must be exercised within 30 days of the date the Claim is first made against an Insured, and the Insureds must not take any action, or fail to take any required action, that would prejudice the rights of the Insureds or the Insurer with respect to such Claim]. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent. . . .
>
> When the Insurer has not assumed the defense of a Claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company . . . in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.
>
> The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. . . . The Insurer's consent shall not be unreasonably withheld . . . .

Pursuant to Endorsement 13, which contains the "Insured v. Insured Exclusion," the exclusions listed in Clause 4 were amended to read, in relevant part, as follows:

> The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured . . . (i) which is brought by any Insured (other than an Employee, but solely with respect to a Securities Claim) or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured; . . . .

¶63 We have on numerous occasions, in the context of determining whether a duty to defend arises, examined the insurer's claim that an exclusion applies. *See e.g. Travelers Cas. and Sur. Co. v. Ribi Immunochem Research, Inc.*, 2005 MT 50, ¶¶ 23-27, 33-45, 326 Mont. 174, 108 P.3d 469; *Town of Geraldine v. Montana Mun. Ins. Auth.*, 2008 MT 411, ¶¶ 14-33, 347 Mont. 267, 198 P.3d 796; *see also Grindheim*, 908 F. Supp. at 801-08. Thus, NUFI's claim that an exclusion applies should similarly be considered. *If* a duty to defend exists, and assuming NUFI has breached that duty, then NUFI may be held liable for defense costs and the judgment. But we cannot hold NUFI liable for the stipulated settlement in the absence of some examination of the Policy and the complaint. NUFI argues that the plain language of the D & O Policy excludes coverage for lawsuits between insureds. In my opinion, we are obligated at least to consider the plain language of the Policy and examine whether the named parties are insureds of NUFI.

¶64 The Court today effects a significant shift in our jurisprudence by holding that it is unnecessary to conduct such analysis if the plaintiffs' claims "potentially implicate" the policy. Opinion, ¶ 30. This broad and nebulous standard effectively moots any future

43

need for an analysis of the policy and the complaint. Since practically any conceivable claim alleged against an insured could "potentially implicate" the policy, the insurer will have a duty to defend in every case. Under today's decision, an insurer's mere act of reading the policy and the complaint is evidence that the insurer recognizes the policy is "potentially implicated," and is thus sufficient to trigger the insurer's duty to defend. This is flat contrary to our precedents, which have held that the duty to defend is not triggered until an examination of the policy and the complaint actually reveals facts representing a risk covered by the terms of the policy. *Staples*, ¶ 20; *Rumph*, ¶ 14; *Graber*, 244 Mont. at 270, 797 P.2d at 217; *Grindheim*, 908 F. Supp. at 798. Merely examining the policy and the complaint to determine whether coverage exists has not—at least before today—been enough to trigger the duty to defend.

¶65 We have often observed that the "fundamental protective purpose of an insurance policy and the obligation of the insurer to provide a defense" require, for example, that an insurer defend under a reservation of rights and pursue a declaratory judgment action to determine coverage.[2] *Staples*, ¶¶ 22, 28. Nevertheless, an insurer still has the right to dispute the existence of the underlying duty to defend and to have a determination made by the court. While the more "prudent" process might be to defend, Opinion, ¶ 28, this does not remove the requirement that an initial assessment be made as to whether the terms of the policy have been invoked by the facts alleged in the complaint. Our decision

---

[2] On August 12, 2010, just seven days after NUFI's letter to counsel for Davis and Maxwell opining that there was no coverage, the plaintiffs filed an amended complaint in the instant lawsuit adding NUFI as a defendant and asserting a declaratory judgment claim to determine coverage under the policy. NUFI filed a motion to dismiss addressing the coverage issue. Thus, the matter of coverage was pending before the District Court.

today will have the effect of requiring insurance companies to defend insureds without any examination of the complaint, without any examination of the insurance policy, and regardless of whether coverage in fact exists. I dissent from this substantial revision the Court effects to the procedures for analyzing whether the duty to defend was triggered.

¶66 Assuming, for the sake of argument, that NUFI did have a duty to defend in this case, it is my view that the District Court and this Court have erred in concluding that there are no disputed facts regarding the breach of that duty. The following portions of the oral argument before the District Court are relevant:

THE COURT: So Mr. Amsden, NUFI in this case has essentially argued that they really didn't breach a duty to defend because they paid these costs. Why aren't they right?

MR. AMSDEN [co-counsel for the plaintiffs]: They didn't pay all the costs. And they didn't pay all the costs -- even the cost they did pay, they didn't pay timely. . . .

.   .   .

MR. MACDONALD [co-counsel for NUFI]: . . . Plaintiffs assert that National Union breached a duty to defend. We dispute that. . . . If the Court doesn't grant our motion for summary judgment that [is] pending, we think a hearing is required, nonetheless. And the hearing needs to address at least the following three issues. First, whether National Union breached any duty to pay defense costs, and if so, whether it was unjustified. . . . I actually think we're entitled to present evidence, Your Honor, that we didn't breach the duty. Mr. Beck [co-counsel for the plaintiffs] put on Mr. McPhee's declaration. He's relied on statements by Mr. McPhee and statements of counsel about whether or not we did pay or didn't pay and whether we timely paid. We think there's evidence that the Court must take before concluding that we breached any duty under the policy. We don't think it's something the Court can decide as a matter of law that we breached the duty under the policy. The cost that the insured's counsel, Mr. Davis and Mr. Maxwell's counsel have been paid, now they dispute that, so they stand up and say, you haven't paid the cost. We believe we have paid the cost. Now, Mr. -- counsel for Mr. Maxwell maybe is sitting on costs that he hasn't submitted, but he has submitted bills after October 28. He submitted bills in April of 2011, and they were paid.

45

So the policy here, unlike the policy in every one of the cases they cite, Your Honor, says squarely that the obligation to advance defense costs is prior to final disposition of the claim. It is a very different policy. These -- as counsel indicated, this is a very different type of policy. A [D & O] policy for a sophisticated company, they negotiated 18 different endorsements to the policy. It wasn't off the shelf. There were 18 endorsements negotiated by a sizeable company. And you have sophisticated insureds, Davis and Maxwell, who understood that their policy provided for paying of defense costs prior to final disposition of the claim. We think that's happened. We don't think there's any breach.

Mr. Macdonald further explained to the District Court: "The duty under this policy, Your Honor, is to pay before final disposition of claim. . . . [NUFI] already paid the invoices. National Union has said, it will continue to say it will pay the defense costs of Davis and Maxwell unless and until this Court grants summary judgment in favor of National Union, Your Honor." Macdonald emphasized that "Mr. Maxwell and Mr. Davis have never been left without counsel in this case."

¶67 As the moving party, the plaintiffs have the initial "burden of demonstrating a complete absence of any genuine factual issues." *Wood v. Old Trapper Taxi*, 286 Mont. 18, 24, 952 P.2d 1375, 1379 (1997). If the plaintiffs meet this burden, the nonmoving party (NUFI) then has the opportunity to demonstrate that a genuine issue of material fact does exist. *Semenza v. Kniss*, 2008 MT 238, ¶ 18, 344 Mont. 427, 189 P.3d 1188. Significantly, "all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party opposing summary judgment"—i.e., NUFI. *Wood*, 286 Mont. at 23, 952 P.2d at 1379. Furthermore, generally speaking, "whether [a] duty has been breached is a question of fact to be decided by the finder of fact." *Brown v. Demaree*, 272 Mont. 479, 482, 901 P.2d 567, 569 (1995) (emphasis omitted); *see also*

46

*Precision Theatrical Effects, Inc. v. United Banks, N.A.*, 2006 MT 236, ¶ 23, 333 Mont. 505, 143 P.3d 442 (the breach of a duty is a question of fact not susceptible to summary judgment); *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 136, 345 Mont. 12, 192 P.3d 186 (questions of fact may be determined as a matter of law on summary judgment only if reasonable minds could reach but one conclusion on the issue).

¶68    Here, NUFI has shown that there are disputed facts regarding whether it breached a duty to defend, thus precluding summary judgment. To begin, Chartis's August 5, 2010 letter on behalf of NUFI—informing counsel for Davis and Maxwell (King and McPhee, respectively) that there was no coverage—did not state that NUFI would deny defense costs. Contrary to the Court's description (Opinion, ¶ 5), the letter did not "assert[ ] that NUFI would no longer cover defense costs in the matter." In fact, the letter contains no discussion of defense costs. The letter simply advised counsel of NUFI's position on coverage. Consistent with our precedent, the letter analyzed the plaintiffs' complaint and the terms of the Policy, then conducted a "coverage analysis." Based on Chartis's understanding of Tidyman's history, the letter concludes: "[I]t appears that the Complaint filed on May 21, 2010, in the Montana Fourth Judicial District, County of Missoula, does not implicate the Policy. We ask that you confirm our understanding of the history of the company." NUFI was clear that this was its "coverage position" and that "[i]f you [King or McPhee] are aware of any information that would indicate that National Union's coverage position is inaccurate, either factually, legally or otherwise, please provide us with that information as soon as possible." The letter did not state that NUFI was denying all further requests for reimbursement of defense costs. Indeed, McPhee

continued to bill NUFI for services rendered in representing Maxwell *after* the August 5, 2010 letter, and King sent a letter dated September 2, 2010, inquiring "whether [NUFI] is going to continue to pay for the costs of defense"—an inquiry that would have been unnecessary had the August 5, 2010 letter actually addressed defense costs.

¶69   An explicit denial of defense costs arguably did not occur until the October 28, 2010 letters from Chartis to McPhee and King, which stated: "[NUFI] is not going to continue to pay the costs of defense of this matter."  This, in fact, is the letter that the plaintiffs' counsel referred to in the District Court as the "bombshell" letter.  Notably, by that date (i.e., by the October 28, 2010 denial), the stipulated settlement had already been finalized.  Evidence in the record indicates that within a week of the August 5, 2010 coverage letter, McPhee and King agreed with counsel for the plaintiffs upon the material terms of the stipulation, including the $29 million stipulated judgment, with no notice to NUFI.   Davis signed the "Stipulation Resulting from Insurer's Refusal to Provide Coverage" on October 25, 2010, three days *before* the "bombshell" letter was issued.  Accordingly, at the very least, the parties' actions and communications during this timeframe establish that an issue of fact exists as to whether the August 5, 2010 letter amounted to a refusal to defend.  The District Court and this Court have exceeded their authority by resolving this factual issue with a particular interpretation of the letter—one that plainly favors the plaintiffs.

¶70   Moreover, in response to claims that it did not reply to inquiries from Davis's counsel, NUFI has provided evidence that it twice attempted to contact King and that it actually advised King and McPhee that it would pay defense costs.  In contrast to the

48

plaintiffs' claim that McPhee was owed $18,000 and had not been paid in months, NUFI has provided evidence that it paid the invoices it received in an appropriate timeframe and that counsel for Davis and Maxwell have always been paid. NUFI provided the affidavit of Lermond, who represented that NUFI would pay the defense costs of Davis and Maxwell to pursue the motion to dismiss and that she paid defense costs of the litigation incurred during the second half of 2010 up to early May 2011. Significantly, Maxwell and Davis did, in fact, have counsel during the timeframe in dispute, which undermines the Court's finding (Opinion, ¶ 27) of a breach of duty. *See State Farm Fire & Cas. Co. v. Schwan*, 2013 MT 216, ¶ 23, 371 Mont. 192, 308 P.3d 48 ("Neither does the failure of State Farm Fire to pay for Stacey's fees constitute a breach of the duty to defend in these circumstances. First, that failure did not affect the Turners—defense counsel and a full defense were provided to them. State Farm Fire further notes that a request for payment of Stacey's fees has not been made to it. As noted above, payment of counsel in this context is a matter of contribution between insurers."). Finally, there is a dispute of fact regarding whether NUFI did defend while seeking a judicial determination, through their motion to dismiss, regarding the existence of coverage.

¶71 The Court discounts NUFI's evidence, choosing instead to credit the plaintiffs' allegations and, based on those allegations, to hold that NUFI breached a duty to defend. Opinion, ¶¶ 27, 31. The Court goes so far as to make a finding that NUFI "failed to defend its insureds or advance defense costs," Opinion, ¶ 31—two propositions that are disputed, with documentary evidence, by NUFI. The Court's approach in this respect is clearly in error. It is inappropriate for a court deciding a motion for summary judgment

49

to weigh evidence, to choose one disputed fact over another, or to assess the credibility of the witnesses. *Andersen v. Schenk*, 2009 MT 399, ¶ 2, 353 Mont. 424, 220 P.3d 675; *Corporate Air v. Edwards Jet Ctr.*, 2008 MT 283, ¶ 28, 345 Mont. 336, 190 P.3d 1111. If the court finds itself having to resolve factual disputes, then summary judgment is not appropriate. *Larson Lumber Co. v. Bilt Rite Constr. & Landscaping LLC*, 2014 MT 61, ¶ 32, 374 Mont. 167, 320 P.3d 471. The parties' allegations and supporting evidence establish genuine issues of material fact regarding NUFI's alleged breach of a duty.

¶72 The District Court, and this Court, also failed to consider whether Davis and Maxwell breached the Policy language regarding stipulated judgments by failing to seek NUFI's approval of the stipulated settlement during the time when records show that NUFI was being billed for defense costs and was continuing to pay those costs. In this regard, the Policy includes a consent clause regarding stipulated judgments:

> *The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer.* Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 8, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.

(Emphasis added.)

¶73 The timing of events is critical in determining whether Davis and Maxwell entered into a stipulated settlement, without NUFI's consent, in contravention of the foregoing

50

provision. As noted, evidence in the record—primarily email communications and drafts of the stipulated settlement—indicate that King, McPhee, and the plaintiffs' counsel were engaged in discussions regarding the material terms of the stipulated settlement in early August 2010, and that Davis signed the final stipulation on October 25, 2010—all *before* the "bombshell" letter of October 28, 2010, to which the Court refers (Opinion, ¶ 27). This evidence suggests that the supposed breach of the duty to defend, which the Court finds as a matter of law (Opinion, ¶ 27), occurred *after* the stipulated settlement had been finalized by McPhee, King, and the plaintiffs' counsel and executed by Davis. The stipulation thus was reached without notice to NUFI and arguably before any communication regarding whether NUFI would continue to pay defense costs. A fact-finder is needed to resolve whether this series of events violated the consent clause and whether NUFI actually breached its duty to defend.

¶74 Given these disputed facts, the plaintiffs' burden, and our precedent requiring that "all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of [NUFI]," *Wood*, 286 Mont. at 23, 952 P.2d at 1379, it is my view that summary judgment is inappropriate. A stipulated judgment should be presumptively valid only when the insured has breached a duty to defend. Based on the foregoing discussion, NUFI cannot be held to have breached a duty to defend as a matter of law.

¶75 In reaching a contrary result, the Court has failed to appreciate the fundamental distinction between directors and officers liability insurance and the more general form of casualty insurance. D & O insurance is a type of insurance designed to protect directors and officers who were "discharging duties to the corporation when the actionable conduct

51

arose." 9A Lee R. Russ et al., *Couch on Insurance 3D*, § 131:31, 131-36 to 131-37 (Thomson/West 2005). D & O insurance developed as shareholder's derivative suits and class actions became more common and directors and officers sought indemnification against the risks of liability. *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 668 (9th Cir. 2009). Insured corporations, in turn, began suing their own directors and officers to recoup operational losses caused by poor business decisions. In reaction to these lawsuits, the insured-versus-insured exclusion arose in D & O policies to protect the insurer against collusion and unintended expansion of coverage. *Biltmore*, 572 F.3d at 668. The Ninth Circuit explained in *Biltmore*:

> The trigger for liability insurance is a claim by someone not under the control of the insured himself. By contrast, people buy casualty insurance against the risks created by their own bad luck or carelessness. Thus, one buys fire insurance and gets indemnified even for carelessly leaving a lit candle untended and burning down one's own house. And one buys automobile comprehensive and collision coverage to get indemnified for carelessly damaging one's own car.
>
> Though there is overlap, many of the risks that affect the price of liability insurance differ from the risks that affect casualty insurance, particularly moral hazard and collusion. For example, almost nobody intentionally induces someone else to collide with his car, but someone might have an interest in burning down his own house if he owed more on it than it was worth. Companies have traditionally purchased "fidelity bonds" to insure the company against employees' dishonesty. Thus if an employee was "bonded" and stole from the company, the insurance company that had issued the bond would have to indemnify the company for the loss.
>
> Because risks such as collusion and moral hazard are much greater for claims by one insured against another insured on the same policy than for claims by strangers, liability policies typically exclude them from coverage. *Allowing such claims would turn liability insurance into casualty insurance, because the company would be able to collect from the insurance company for its own mistakes, since it acts through its directors and officers.* The exclusion protects of course against collusion, and also against the risk of selling liability insurance for what amounts to a fidelity

52

bond. If the exclusion were ignored, then those companies who only want to pay for protection against third party claims they cannot control would have to bear the additional financial burden of paying for claims over which companies have more control.

572 F.3d at 668-69 (emphasis added, footnote omitted). Thus, the Policy's Insured v. Insured exclusion protects the insurer, NUFI, against collusive lawsuits as alleged here.

¶76 D & O liability policies "generally do not obligate the insurer to provide a defense, but only to reimburse expenses incurred in defense of claims against the insured." Russ et al., *supra*, § 131:31, at 131-36. Consistent with these principles, Gary Zadick (co-counsel for NUFI) stated in the District Court: "I first wanted to emphasize this policy is different. This is a policy that says, we'll reimburse your defense costs." Zadick continued:

> This is a different policy. This is a reimbursement policy. Ms. Lermond paid the invoice of Davis' counsel for the Montana court action, November 2010. That's in the record billing invoices. Ms. Keane, who is here today, has been paying the bill since then. She paid the invoice of Mr. Maxwell in the Spring of 2011 when it was submitted.

Zadick explained:

> Under a liability policy, Your Honor, the insurer goes out and selects the attorney, pays him from day one. The insured doesn't advance any cost. Under this type of policy [in the present case], a D & O policy, the defense costs are billed to the company, the insured. They pay them and they submit for reimbursement. So there is a difference.

This case, therefore, is distinguishable from cases involving an alleged breach of the duty to defend under a traditional casualty insurance policy—a fact the Court has failed to appreciate in its analysis.

¶77 As a final matter, I believe the Court's "procedural" and "substantive" distinction regarding reasonableness (subparts (a) and (b) of Issue 3) is inartful and unnecessary. While we have never required a court to conduct a reasonableness hearing, we have always held that the amount of the judgment must be fair, reasonable, and in good faith. *Indep. Milk & Cream Co. v. Aetna Life Ins. Co.*, 68 Mont. 152, 157, 216 P. 1109, 1110 (1923); *Keating v. Universal Underwriters Ins. Co.*, 133 Mont. 89, 100, 320 P.2d 351, 357 (1958); *Washington Water Power Co. v. Morgan Elec. Co.*, 152 Mont. 126, 138, 448 P.2d 683, 689 (1968); *see also* § 27-1-302, MCA ("Damages must in all cases be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages contrary to substantial justice, no more than reasonable damages can be recovered."); *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 36, 372 Mont. 191, 312 P.3d 403 (recognizing the concerns that "[t]he insured has little incentive to minimize the settlement amount in negotiating a stipulated judgment" and that "there [is no] assurance that a stipulated judgment represents a proper calculation of the actual damages"); *cf. LeMond v. Yellowstone Dev., LLC*, 2014 MT 181, ¶¶ 50-52, ___ Mont. ___, ___ P.3d ___ (holding that even where the parties have stipulated to a particular remedy—in this case, a constructive trust—the trial court is still required to determine whether the stipulation constitutes an appropriate measure of relief). Certainly a reasonableness hearing, if one is requested, should be mandatory where, as here, the insurer has raised plausible concerns about the fairness, reasonableness, and good faith of the stipulated settlement.

¶78 In this regard, I agree that once a duty to defend has been breached, the stipulated judgment is presumed reasonable. Opinion, ¶ 41. I further agree that the district court should be given discretion to define the parameters of the hearing and the scope of discovery. Opinion, ¶ 44. However, I disagree that the facts alleged by NUFI here do not create a genuine issue of material fact as to the existence of collusion. Opinion, ¶ 48. NUFI presents evidence that Davis, Maxwell, and the plaintiffs, through respective counsel, negotiated and partially executed the $29 million stipulated settlement *before* NUFI expressly refused to pay defense costs. Additionally, NUFI alleges that the plaintiffs improperly manipulated their pleadings in an attempt to create coverage. In *Burns v. Underwriters Adjusting Co.*, 234 Mont. 508, 765 P.2d 712 (1988), we rejected an attempt to manipulate the pleadings in order to manufacture coverage, observing: "'To hold otherwise is to invite undercover deals, lack of candor, and manipulation of the tort pleadings as a device for involving an insurer who could not otherwise be involved.'" 234 Mont. at 510-11, 765 P.2d at 713 (quoting *Farmers & Merchs. State Bank v. St. Paul Fire & Marine Ins. Co.*, 242 N.W.2d 840, 844 n. 7 (Minn. 1976)).

¶79 I find it truly a sad day for justice in this State, and very likely a huge blow to the public's belief that the courts provide fair resolutions of disputes, when this Court dismissively says "so what" to a stipulated judgment that allegedly was obtained by collusion, and when this Court further condones this as "nothing other than the usual custom and practice in which parties engage in Montana as a consequence of an insurer's failure to defend." Opinion, ¶ 48 (internal quotation marks omitted). Courts exist to

administer justice fairly, regardless of whom and what a particular party represents. In my opinion, there is never a place for collusion in the administration of justice.

¶80    While I concur in the Court's decision as to Issues 1 and 4, and in the Court's holding under subpart (b) of Issue 3, I dissent as to Issue 2 and subparts (a) and (c) of Issue 3.


                                        /S/ LAURIE McKINNON