IN THE SUPREME COURT OF THE STATE OF DELAWARE

STILLWATER MINING COMPANY, §
        §
    Plaintiff Below, §   No. 24, 2022
    Appellant, §
        §   Court Below: Superior Court
    v. §   of the State of Delaware
        §
NATIONAL UNION FIRE §   C.A. No. N20C-04-190
INSURANCE COMPANY OF §
PITTSBURGH, PA, §
ACE AMERICAN INSURANCE §
COMPANY, and QBE INSURANCE §
CORPORATION, §
        §
    Defendants Below, §
    Appellees. §

Submitted: October 26, 2022
Decided: January 12, 2023

Before **SEITZ**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

David J. Baldwin, Esquire, Peter C. McGivney, Esquire, BERGER HARRIS LLP, Wilmington, Delaware, Martha Sheehy, Esquire (*argued*), SHEEY LAW FIRM, Billings, Montana, and Kyle A. Gray, Esquire, HOLLAND & HART LLP, Billings, Montana, *for Plaintiff Below, Appellant Stillwater Mining Company*.

Kurt M. Heyman, Esquire (*argued*), Aaron M. Nelson, Esquire, HEYMAN ENERIO GATTUSO & HIRZEL, LLP, Wilmington, Delaware, Scott B. Schreiber, Esquire, William C. Perdue, Esquire, Andrew T. Tutt, Esquire, and Samuel I. Ferenc, Esquire, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., *for Defendant Below, Appellee National Union Fire Insurance Company of Pittsburg, Pa.*

John C. Phillips Jr., Esquire, David A. Bilson, Esquire, PHILLIPS, MCLAUGHLIN & HALL, P.A., Wilmington, Delaware, Geoffrey W. Heineman, Esquire, Jung H.

Park, Esquire, and John J. Iacobucci Jr., Esquire, ROPERS MAJESKI, PC, New York, New York, *for Defendant Below, Appellee QBE Insurance Corporation*.

John L. Reed, Esquire (*argued*), DLA PIPER LLP, Wilmington, Delaware, Gregory F. Fischer, Esquire, COZEN O'CONNOR, Wilmington, Delaware, Angelo G. Savino, Esquire, COZEN O'CONNOR, New York, New York, *for Defendant Below, Appellee ACE American Insurance Company.*

**SEITZ**, Chief Justice:

Stillwater Mining Company filed suit against its directors' and officers' liability insurers to recover the expenses it incurred defending a Delaware stockholder appraisal action. The Superior Court granted the insurers' motions to dismiss after it found that Delaware law applied to the dispute and our Court's decision in *In re Solera Ins. Coverage Appeals* ("*Solera II*") precluded coverage for losses incurred in a stockholder appraisal action under a similar D&O policy.

The main issue on appeal is whether Delaware or Montana law applies to the claims in Stillwater's amended complaint. Stillwater argues that the Superior Court should have applied Montana law because Montana has the most significant relationship to the dispute and the parties. If Montana law applies, according to Stillwater, it can recover its defense costs – not because the policies cover the loss – but because Montana recognizes coverage by estoppel, meaning the insurers are estopped to deny coverage when they failed to defend Stillwater in the appraisal action.

We affirm the Superior Court's judgment. Before this Court issued its *Solera II* decision, the Superior Court in *Solera I* held that D&O insureds could recover losses incurred in a stockholder appraisal action. Taking advantage of the trial court's favorable ruling, Stillwater argued that Delaware law applied to the interpretation of the policies. As it argued in its original complaint,

3

"Delaware law applies to the principles of contract interpretation at issue in this proceeding" and "Delaware has a strong interest in the application of its principles of corporate law and governance in construing the directors' and officers' liability insurance policies at issue in this matter."[1]

After *Solera II*, however, Stillwater reversed position and claimed that Montana law applies to the policies. Its amended complaint dropped all indemnity claims for covered losses in favor of three contractual claims for the duty to advance defense costs and a statutory claim under Montana law. In our view, Stillwater's amended claims raise the same Delaware interests that Stillwater identified in its original complaint – applying one consistent body of law to insurance policies that cover comprehensively the insured's directors', officers', and corporate liability across many jurisdictions. Stillwater also challenges the Superior Court's denials of its motion for voluntary dismissal without prejudice and its motion to stay pending resolution of the action Stillwater filed in Montana. The Superior Court did not exceed its discretion when it denied both motions.

---

[1] App. to Answering Br. at B275.

I.

A.

Stillwater Mining Company is a Delaware corporation with its principal place of business in Stillwater County, Montana.[2]  Stillwater has directors', officers', and corporate liability insurance policies (the "D&O policies") from National Union Fire Insurance Company ("NUFI"), as primary policy issuer, and ACE American Insurance Company and QBE Insurance Corporation, as excess insurers.[3]  We refer to the three defendants together as the "Insurers."

The D&O policies provide that the Insurers "shall pay the Loss . . . arising from any Securities Claim made against [Stillwater] for any Wrongful Act."[4]  The policies define "Loss" to include defense costs.[5]  The policies define a "Securities Claim" as "a Claim . . . alleging a violation of any law, rule or regulation, whether statutory or common law."[6]  Under the policies, "Wrongful Act" means "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by [Stillwater], but solely in regard to a Securities Claim."[7]  The

---

[2] Unless otherwise specified, the facts are drawn from the Superior Court's opinion, *Stillwater Mining Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2021 WL 6068046 (Del. Super. Dec. 22, 2021) [hereinafter *Stillwater*].

[3] The contract terms are from the primary policy.  The excess policies are follow-form policies that incorporate the primary policy's terms and conditions.  Opening Br. at 7 n.2; NUFI and QBE's Answering Br. at 8 [hereinafter Answering Br.].

[4] App. to Opening Br. at A0205.

[5] *Id.* at A0222, A0225.

[6] *Id.* at A0247.

[7] *Id.* at A0230.

D&O policies do not require the Insurers to provide a defense in litigation but the Insurers "shall advance . . . covered Defense Costs" once they "received written notice of a Claim."[8]

The D&O policies do not have a choice-of-law provision, but Stillwater emphasizes that they contain Montana amendatory endorsements, one of which provides for conformity with Montana law.[9] Another Montana amendatory endorsement governing alternative dispute resolution states that "[t]he mediator or arbitrators shall give due consideration to the general principles of the law of the state where [Stillwater] is incorporated in the construction or interpretation of the provisions of this policy."[10] The policies afford coverage "anywhere in the world."[11]

The D&O policies formed a tower of insurance that provided directors', officers', and corporate liability coverage for claims made during the policy period from May 1, 2016, to August 1, 2017.

B.

Stillwater was publicly traded until 2017 when Sibanye Gold Limited, a South African mining company, acquired Stillwater in a merger and took it private. Following the merger, some Stillwater stockholders filed an appraisal action in the

---

[8] *Id.* at A0213.
[9] Opening Br. at 7, 23–24; App. to Opening Br. at A0236.
[10] App. to Opening Br. at A0237.
[11] *Id.* at A0206.

Court of Chancery under 8 *Del. C.* § 262, seeking the fair value of their stock.[12] In the appraisal proceeding, the petitioners claimed that Stillwater's board and CEO conducted a flawed and biased sale process and breached their fiduciary duty to obtain fair value for Stillwater stock.

In April 2017, Stillwater notified the Insurers of the appraisal demands and requested approval to incur defense costs.[13] NUFI advised Stillwater in June 2017 that it would be issuing a disclaimer letter in response to the notice of appraisal demands, but it did not do so.[14] Neither ACE nor QBE accepted coverage for the demands.[15]

On July 31, 2019, the Superior Court held in *Solera I* that a D&O policy covered a Delaware stockholder appraisal action because it alleged a violation of law and thus was a covered "securities claim" under the policy's definition.[16] Both Stillwater and the Insurers agree that the D&O policies in the current case are substantially similar to the relevant portion of the policy in *Solera I*.[17] Stillwater contends that *Solera I* was the first time any court in the country addressed insurance coverage of a Delaware appraisal action under a D&O policy. Thus, according to

---

[12] *Id.* at A0173. The petitioners filed multiple appraisal actions which were consolidated into *In re Appraisal of Stillwater Mining Co.*, C.A. No. 2017-0385-JTL. *Id.*
[13] *Id.* at A0184.
[14] *Id.* at A0185.
[15] *Id.*
[16] *Solera Holdings, Inc. v. XL Specialty Ins. Co.*, 213 A.3d 1249, 1256 (Del. Super. 2019) [hereinafter *Solera I*].
[17] App. to Opening Br. at A0185; Answering Br. at 10.

Stillwater, both before and after *Solera I,* the appraisal action "at least potentially implicated the D&O policies' coverage for Securities Claims" and triggered the Insurers' duty to defend.[18]

In August 2019, the Court of Chancery found after trial that the fair value of Stillwater stock on the valuation date was the transaction price of $18 per share.[19] The court also found that the petitioners failed to show a flawed and biased sale process. As required by statute, the court awarded interest to the petitioners. The petitioners appealed, and this Court affirmed the Court of Chancery's judgment.[20]

Stillwater notified the Insurers of the Court of Chancery's decision and demanded reimbursement of defense costs and statutory interest payments.[21] Shortly after, Stillwater received NUFI's notice denying coverage for the appraisal action. NUFI explained that "[t]he Appraisal Action is not a Claim alleging a violation of any law, rule or regulation and as such does not assert a Securities Claim . . . . Moreover, the Appraisal Action did not allege a Wrongful Act."[22]

After unsuccessful mediation efforts, on April 13, 2020, NUFI filed a declaratory judgment action against Stillwater in the Superior Court and sought a declaration that the D&O policy did not cover losses from the appraisal action. In

---

[18] Opening Br. at 9.

[19] *In re Appraisal of Stillwater Min. Co.*, 2019 WL 3943851, at *61 (Del. Ch. Aug. 21, 2019).

[20] *Brigade Leveraged Capital Structures Fund, Ltd. v. Stillwater Min. Co.*, 240 A.3d 3 (Del. 2020).

[21] App. to Opening Br. at A0186.

[22] *Id.*

response, Stillwater filed its own action in the Superior Court against NUFI, ACE, QBE, and other excess insurers seeking coverage for defense costs and statutory interest payments from the appraisal action.[23]

C.

Against the backdrop of *Solera I*, Stillwater alleged in its original complaint that "Delaware law applies to the principles of contract interpretation at issue in this proceeding" and "Delaware has a strong interest in the application of its principles of corporate law and governance in construing the directors' and officers' liability insurance policies at issue in this matter."[24] The complaint was limited to indemnity claims. In other words, Stillwater sought to recover its defense costs and statutory interest payments as covered losses under the policies' indemnity provisions, not under a contractual duty to advance defense costs.[25] Stillwater also filed a motion for judgment on the pleadings in NUFI's declaratory judgment action, relying primarily on *Solera I*. The Superior Court stayed briefing on the motion pending the appeal of *Solera I*. The court then consolidated NUFI's declaratory judgment action with Stillwater's coverage action.

---

[23] Stillwater dropped the other excess insurers in its amended complaint and left only NUFI, ACE, and QBE as defendants.

[24] App. to Answering Br. at B275.

[25] *Id.* at B269–99.

9

On October 23, 2020, this Court reversed *Solera I*.[26] We held in *Solera II* that an appraisal action under 8 *Del. C.* § 262 is not a claim "for a violation of law" and therefore not a "securities claim" under the D&O policy.[27] We explained that:

> this conclusion is compelled by the plain meaning of the word "violation," which involves some element of wrongdoing, even if done with an innocent state of mind. It is also compelled by section 262's historical background, its text, and by a long, unbroken line of cases that hold that an appraisal under section 262 is a remedy that does not involve a determination of wrongdoing. Rather, it is a remedy limited to the determination of the fair value of the dissenters' shares as of the effective date of the merger or consolidation.[28]

In reaction to *Solera II*, Stillwater filed a complaint against the Insurers in Montana state court.[29] And, on the same day, Stillwater filed in the Superior Court a motion to dismiss its Delaware action without prejudice or, in the alternative, for leave to file an amended complaint. The court denied the motion for voluntary dismissal but allowed the motion to amend.

Stillwater amended its complaint and no longer sought to recover the statutory interest payments – only defense costs – and dropped all indemnity claims. The amended complaint had four counts: (1) breach of contract against NUFI for its failure to advance defense costs for the appraisal action; (2) breach of contract for failure to advance defense costs against ACE and QBE; (3) declaratory judgment

---

[26] *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121 (Del. 2020) [hereinafter *Solera II*].
[27] *Id.* at 1121.
[28] *Id.* at 1132.
[29] Opening Br. at 14. On November 24, 2021, the Montana court granted the Insurers' motion to stay the Montana action pending resolution of this case. Answering Br. at 13.

against all Insurers for breach of the duty to advance defense costs; and (4) violation of the Montana Unfair Trade Practices Act ("MUTPA") against all Insurers for improper claims handling. After the amended complaint, Stillwater reversed course and argued that Montana law, not Delaware law, applied to the dispute.

The Insurers moved to dismiss Stillwater's amended complaint for failure to state a claim. After the parties briefed and argued the motions to dismiss, Stillwater filed a motion to stay pending resolution of the Montana action. The Superior Court denied the motion to stay and found that it was filed too late and essentially sought to reargue its voluntary dismissal motion.[30]

The Superior Court eventually granted the Insurers' motions to dismiss for failure to state a claim.[31] The court first assumed an actual conflict existed between Delaware and Montana law after it found that Stillwater advanced a plausible argument that Montana law imposed on an insurer a higher burden and more significant consequences than Delaware law for refusing to defend. The court then relied on our Court's decision in *RSUI Indem. Co. v. Murdock*[32] and held that Delaware, as the state of Stillwater's incorporation, had the most significant relationship to the D&O policies and the dispute and therefore Delaware law applied. Finding that *Solera II* barred coverage for the appraisal action, the court held that

---

[30] App. to Opening Br. at A0602.
[31] *Stillwater*, 2021 WL 6068046, at *12.
[32] 248 A.3d 887 (Del. 2021).

11

Stillwater failed to demonstrate that its insurance policies afforded coverage for the alleged loss. Also, the court was not persuaded that Montana law should apply to the newly pled claims-handling counts. The Superior Court reasoned that "[t]he application of different states' laws to different aspects of a contractual relationship reduces both certainty and efficiency" and ran counter to our *Murdock* decision where we emphasized the importance of a single body of law to govern comprehensive insurance programs with broad geographical coverage.[33] The court dismissed all of Stillwater's claims with prejudice.

## II.

On appeal, Stillwater argues that the Superior Court erred when it applied Delaware law. According to Stillwater, Montana law should apply to the amended complaint because Montana has the most significant relationship to the dispute. Although it took the position that Delaware law should apply to the interpretation of the D&O policies and the indemnity claims in its original complaint, Stillwater argues that its amended claims are limited to claims handling and the duty to defend, not coverage and indemnity.[34]

---

[33] *Id.* at *11 (citing *Murdock*, 248 A.3d at 899).

[34] In Counts I–III of its amended complaint, Stillwater based its arguments on the contractual "duty to defend" and uses the term interchangeably with the obligation to "advance defense costs." *See, e.g.*, Opening Br. at 13, 18, 32. For purposes of this case, the distinction between the duty to defend and the duty to advance defense costs is immaterial to our ruling. We use the two terms interchangeably here but understand that some jurisdictions draw a distinction between the two. *See, e.g., Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F. Supp. 2d 995, 1004 (C.D. Cal. 2009); *see also In re Viking Pump, Inc.*, 148 A.3d 633, 670 n. 163 (Del. 2016) (recognizing courts in other

According to Stillwater, Montana has a strong interest in adjudicating the newly pled claims because it strictly regulates insurance claims-handling, no parties have their principal places of business or offices in Delaware, and the policies were negotiated and performed in Montana. Finally, Stillwater contends that the Superior Court exceeded its discretion when it denied Stillwater's voluntary motion to dismiss and motion to stay, and erred when it misapplied the relevant factors considered when evaluating the motions.

We review *de novo* the Superior Court's choice of law[35] and the grant of a motion to dismiss for failure to state a claim upon which relief could be granted.[36] The court should grant a motion to dismiss for failure to state a claim "only if the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[37] When considering the motion, the court must "accept all well-pleaded factual allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff."[38] We review the Superior Court's denials of a motion for voluntary dismissal and motion to stay for abuse of discretion.[39] "An abuse of discretion occurs when a court has exceeded the bounds of reason in view

jurisdictions embraced the notion that "the duty to defend and the duty to pay defense costs are two distinct obligations").

[35] *Murdock*, 248 A.3d at 896.

[36] *City of Fort Myers General Employees' Pension Fund v. Haley*, 235 A.3d 702, 716 (Del. 2020).

[37] *Id.* (internal quotations omitted).

[38] *Id.* (internal quotations omitted).

[39] *Draper v. Paul N. Gardner Defined Plan Tr.*, 625 A.2d 859, 868 (Del. 1993); *GXP Capital, LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d 93, 103 (Del. 2021).

of the circumstances or so ignored recognized rules of law or practice to produce injustice."[40]

## A.

As an initial matter, it is important to keep in mind how Stillwater's claims and positions have shifted over time. In Stillwater's original complaint, Stillwater sought to recover its litigation expenses and statutory interest payments under the indemnity and coverage provisions of the policies. It did not allege a separate breach of the duty to defend Stillwater in the appraisal proceeding. Stillwater also argued that "Delaware law applies to the principles of contract interpretation at issue in this proceeding" and "Delaware has a strong interest in the application of its principles of corporate law and governance in construing the directors' and officers' liability insurance policies at issue in this matter."[41] Stillwater's original complaint also quoted the policies' amendatory endorsement on alternative dispute resolution, which directed mediators and arbitrators to give due consideration to Delaware law when interpreting the policies.[42] Thus, when it came to interpreting the insurance policies and their indemnity provisions, Stillwater was more than content to apply Delaware law. After all, *Solera I* improved its chances of success.

---

[40] *Harper v. State*, 970 A.2d 199, 201 (Del. 2009).
[41] App. to Answering Br. at B275.
[42] *Id.* at B290.

After our Court decided *Solera II*, which doomed Stillwater's original complaint, it filed an amended complaint. The new complaint dropped its indemnity claims and brought new claims for breach of the duty to defend and Montana statutory claims. Stillwater disavowed Delaware law and argued that Montana law should apply to these claims.

The Superior Court expressed its discomfort with Stillwater's change of position.[43] We have the same concern. Although Stillwater changed the nature of its claims, Counts I–III of the amended complaint still allege "breach of contract" claims.[44] As we explain below, the same Delaware policy interests identified earlier by Stillwater in its original complaint still apply to the amended breach of contract claims.

B.

In *Certain Underwriters at Lloyds, London v. Chemtura Corporation*, we set forth a three part test to determine the choice of law in a dispute before the Delaware courts: "i) determin[e] if the parties made an effective choice of law through their contract; ii) if not, determin[e] if there is an actual conflict between the laws of the

---

[43] *Stillwater*, 2021 WL 6068046, at *1 ("Arguably, the plaintiff is bound by its previous representations to this Court.").

[44] Count III sought a declaratory judgment that Stillwater was obligated to advance defense costs in the appraisal action. We treat the breach of contract counts and the declaratory judgment count as essentially the same – asserting as a declaratory judgment the contractual right to advanced defense costs under the insurance policies.

different states each party urges should apply; and iii) if so, analyz[e] which state has the most significant relationship" to the claims.[45]

The parties did not specify a choice of law in the insurance policies. And, as the Superior Court found, Stillwater made a plausible argument that Delaware and Montana law conflicted when it came to duty-to-defend claims. Our Court has not recognized coverage by estoppel.[46] Montana has recognized coverage by estoppel, which means that when an insurer "refuses to defend a claim and does so unjustifiably, . . . [it] is estopped from denying coverage and becomes liable for defense costs and judgments."[47] The Montana Supreme Court in *Tidyman's Management Service. Inc. v. Davis* found the insurer liable for breach of the duty to defend without deciding whether the claims were covered under the policy.[48]

---

[45] 160 A.3d 457, 464 (Del. 2017) (footnotes and citations omitted).

[46] The Superior Court appears to have declined to apply coverage by estoppel. *See Consol. Rail Corp. v. Liberty Mut. Ins. Co.*, 2005 WL 697943, *4 (Del. Super. Mar. 16, 2005), *aff'd in part, rev'd in part sub nom. Pac. Ins. Co. v. Liberty Mut. Ins. Co*., 956 A.2d 1246 (Del. 2008) (holding the insurer's breach of the duty to defend did not constitute a waiver of coverage defenses); *McLewin v. Hill*, 1998 WL 109840, at *8 (Del. Super. Feb. 18, 1998) ("As a general rule, . . . estoppel . . . cannot operate to bring within a policy's coverage property, risks or losses which the policy's terms expressly or otherwise exclude."). The Insurers argue that "*Solera II* conclusively establishes that there is no coverage as a matter of law" and therefore "there is no duty to defend" under Montana law. Answering Br. at 33. But the Insurers cite no Montana cases where a legal decision on a coverage issue precluded a breach of the duty to defend claim. Indeed, the argument is inconsistent with the Montana cases, cited above, which suggest estoppel and coverage are separate issues. Further, the argument does not fully explain whether the Insurers' refusal to defend before *Solera II* was a breach of the duty to defend under Montana law.

[47] *Tidyman's Mgmt. Servs. Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) (internal citation omitted).

[48] 330 P.3d at 1149 (finding the duty to defend was breached when the insurer defended the insured's federal case, thus acknowledging the claims were potentially covered by the policy, but later declined to defend a state case against the insured raising similar claims).

16

Recently in *National Indemnity Company v. State*, the Montana Supreme Court again found that "[e]stoppel is applied without regard to coverage defenses or considerations."[49]  Thus, with a conflict of laws, "the next step is to assess which state has the most significant relationship to the contract and the parties to the contract" using the considerations in the *Restatement (Second) of Conflict of Laws*.[50]

C.

Section 193 of the *Second Restatement* "provides a presumption for insurance contracts[] that, as a general matter, the law of the state 'which the parties understood was to be the principal location of the insured risk' should be applied because that state will have the most significant relationship."[51]  If "some other state has a more significant relationship to the transaction and the parties, . . . the local law of the other state will be applied."[52]

But when, like here, the insurance policies are part of a comprehensive program insuring risks that are not confined to a single jurisdiction, the presumption is only "directionally helpful but arguably not conclusive."[53]  In this instance, the trial court's attention should turn to the "broader subject-matter-specific factors" in Section 188, which set forth the relevant contacts to consider when examining the

---

[49] 499 P.3d 516, 536 (Mont. 2021).
[50] *Chemtura*, 160 A.3d at 464.
[51] *Id.* at 465.
[52] *Second Restatement* § 193.
[53] *Chemtura*, 160 A.3d at 467.

different states' relationships to the insurance policies.[54]   In other words, the "presumption does not apply" to the policies in this appeal "which provide broad-based coverage across many jurisdictions for a company's enterprise-wide risks."[55]

D.

Section 188 of the *Second Restatement* has "five factors to use to decide which state has the most significant relationship:"[56]

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.[57]

When weighing the five factors, the court reviews them in the context of the overarching choice-of-law considerations in Section 6 of the *Second Restatement*:[58]

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.[59]

---

[54] *Id.* at 465, 467.
[55] *Id.* at 465.
[56] *Id.*
[57] *Id.* (citing Second Restatement § 188).
[58] *Id.* at 468.
[59] Second Restatement § 6.

In *Murdock*, we applied the *Second Restatement* and found that Delaware has strong interests at stake for D&O policies issued to Delaware corporations.[60] We held "the state of incorporation is the center of gravity of the typical D&O policy" and the California contacts, where the insured was headquartered, were insufficient to tip the balance away from Delaware.[61] Specifically, we found that 8 *Del. C.* § 145 intended to permit "Delaware corporations to provide broad indemnification and advancement rights to their directors and officers and to purchase D&O policies to protect them even where indemnification is unavailable," and that applying "'Delaware law to the D&O policies that actually cover those costs advances the relevant policies of the forum.'"[62]

In *Chemtura*, we reversed the trial court's decision when it applied, on a claim-by-claim basis, different states' law depending on where environmental claims arose.[63] We found a claim-by-claim review frustrated the intent of "comprehensive insurance programs to have a single interpretive approach utilizing a single body of law."[64] We reiterated in *Murdock* that when the policies were "part of a comprehensive insurance program addressing risks across corporate operations in multiple jurisdictions, the selection of a single interpretive approach, i.e., one

---

[60] 248 A.3d at 900–01.

[61] *Id.* at 901.

[62] *Id.* at 900 (quoting *Calamos Asset Management, Inc. v. Travelers Casualty & Surety Co. of America*, 2020 WL 3470473, at *3 (D. Del. June 25, 2020)).

[63] 160 A.3d at 459.

[64] *Id.* at 460.

19

state, as opposed to many, whose law would apply with regard to where a claim arose, would best serve the parties' expectations."[65]

E.

1.

As it did in the Superior Court, Stillwater once again tries to distinguish *Murdock* by stressing the company's connections to Montana, but those connections are essentially the same as those that came up short in *Murdock*. The insurer in *Murdock* advocated for California law by pointing to California connections almost identical to those here – the location of its headquarters and the place where negotiation and procurement of policy coverage took place.[66] Our Court found that the "emphasis on physical location underrates the significance of [the company's] status as a Delaware corporation—an entity formed and existing by virtue of the Delaware Constitution and the Delaware General Corporation Law. As such, [the company] is every bit a 'citizen' of Delaware as it is of California."[67] We held that the alleged California contacts, when balanced "against Delaware's interest in protecting the ability of its considerable corporate citizenry to secure D&O insurance

---

[65] *Murdock,* 248 A.3d at 899.
[66] *Id.* at 897-98.
[67] *Id.* at 901. Stillwater argues that the current case is about corporate liability rather than directors' or officers' liability. This does not distinguish the case from *Murdock* because "we must examine the insurance contract as a whole to determine its subject matter." *Id.* at 900. The subject matter of the policies here is directors', officers, and corporate liability, and we have found "Delaware has specific policies that affect this subject matter as expressed in 8 *Del. C.* § 145." *Id.*

20

and thereby attract talented directors and officers," were not "sufficient to tip the balance toward California."[68]

2.

Stillwater also argues that the policies have Montana amendatory endorsements, and one endorsement states that the policy "conform[s] to the minimum requirements of Montana law."[69] We agree with the Superior Court that the Montana amendatory endorsements do not alter the balance of factors in this case. As the Superior Court held, "those provisions are neither unusual nor sufficiently strong enough to tip the scale in favor of applying Montana law."[70] And, as the Superior Court explained, "Delaware courts have declined to give those provisions dispositive weight in a conflict of laws analysis."[71] It is also important to note that a Montana amendatory endorsement covering alternative dispute resolution points in the other direction – "[t]he mediator or arbitrators shall give due consideration to the general principles of the law of the state where [Stillwater] is incorporated in the construction or interpretation of the provisions of this policy."[72]

---

[68] *Id.*
[69] Opening Br. at 23–24.
[70] *Stillwater*, 2021 WL 6068046, at *10.
[71] *Id.* (first citing *Sycamore Partners Mgmt., L.P.*, 2021 WL 4130631 (Del. Super. Sept. 10, 2021); then citing *Murdock*, 248 A.3d at 898; finally citing *Pfizer Inc. v. Arch Insurance Co.*, 2019 WL 3306043, at *7 (Del. Super. July 23, 2019)).
[72] App. to Opening Br. at A0237.

3.

In what might be considered its main argument on appeal, Stillwater claims that Delaware does not have the strong interest present in *Murdock* because, unlike in *Murdock*, the current iteration of the complaint is about claims handling, not policy coverage. Stillwater points to what it claims is Montana's heightened vigilance over duty-to-defend claims and its application of coverage by estoppel.

This argument fails for two reasons. First, we disagree that this dispute should be characterized as a claim-handling dispute. Instead, it is mainly a contract dispute involving the interpretation of the parties' obligations and rights under the D&O policies.[73] As noted earlier, Stillwater has already taken the position that, for purposes of its earlier indemnity claims, Delaware law should apply to interpretive questions. By focusing narrowly on the claim-handling aspect when deciding which law to apply, a trial court would be required to apply different laws to the same contract depending on whether the claim is for indemnity or for breach of contract for failure to advance defense costs. In *Chemtura* and *Murdock*, we emphasized the importance of applying a single body of law to comprehensive insurance policies like those here.

---

[73] *See Chemtura*, 160 A.3d at 459–60 (characterizing the dispute as a contract dispute involving the interpretation of the insurance policies rather than about the underlying insurance claims).

Second, Stillwater has not shown that Montana has a relatively greater interest than Delaware for the current dispute, which involves D&O policies purchased by a Delaware corporation and an appraisal action brought in Delaware. Stillwater has recognized that, in an insurance dispute, the Montana legislature intended Montana law to apply if the "performance of the contract occurred in Montana."[74] It argues that Montana is the place of performance here. But the Montana Supreme Court's decision in *Tidyman's*, cited extensively by Stillwater, undermines this argument. There, the Court noted that the D&O policy provided that the place of performance was anywhere in the world and thus Montana was only one of the anticipated places of performance.[75] Because the insured's underlying action was brought and settled in Montana, the Court in *Tidyman's* found Montana to be the place of performance.[76] Here, the D&O policies can be performed "anywhere in the world," including Delaware, and the underlying appraisal action was brought by shareholders of a Delaware corporation in the Delaware Court of Chancery. Montana does not have a stronger relative interest in this case than Delaware.

---

[74] *Tidyman's,* 330 P.3d at 1147 (citing *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 708–09 (Mont. 2003)). *See also* Mont. Code Ann. §28-3-102 (West); Opening Br. at 16–17.

[75] *Tidyman's,* 330 P.3d at 1149.

[76] *Id.* Stillwater argues that because the D&O policies here only require the Insurer to "advance the defenses" – not to defend Stillwater in court – the place of performance is Montana where Stillwater would receive the advancement. Opening Br. at 22–23. But *Tidyman's* was also about the obligation to advance the defense costs. 330 P.3d at 1165.

23

4.

Stillwater has conceded that, if Delaware law applies to its contract claims, it cannot recover its costs. With the dismissal of Stillwater's duty-to-defend claims in Counts I–III, its MUTPA claim also fails. The MUTPA claim is based on the same theory that the Insurers mishandled the insurance claims. Stillwater does not argue that the choice-of-law analysis on this claim should be any different from the duty-to-defend claims. Thus, Delaware law applies and Stillwater has no private right of action under Delaware's comparable statute.[77] Nor would a different choice of law provide Stillwater a meaningful victory because even if we apply Montana law to Count IV, Stillwater still cannot recover under the MUTPA when there is no breach of the duty to advance defense costs.[78] Stillwater spent one paragraph arguing without support that its MUTPA claim could "go forward even if the insurer did not

---

[77] *See*, *e.g.*, *Anschutz Corp. v. Brown Robin Capital, LLC*, 2020 WL 3096744 (Del. Ch. June 11, 2020) (where Delaware law governs the contract and the plaintiff's claims were for fraud and securities violations, the court dismissed claims asserted under other states' statutes)*; Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc.*, No. CIV.A.3:05CV355, 2006 WL 5908727, at *11 (E.D. Va. Feb. 10, 2006) (where Georgia law applies to the claims, the court dismissed Virginia statutory claims). *See also* 18 *Del. C.* § 2301, *et seq.*; *GEICO Gen. Ins. Co. v. Green*, 276 A.3d 462, 462 n.79 (Del. 2022) (TABLE) ("[T]he Delaware Unfair Trade Practices Act does not create a private right of action."); *Peterson v. 21st Century Centennial Ins. Co.*, 2015 WL 4154070, at *3 (Del. Super. July 9, 2015) ("[T]his Court has repeatedly held that 18 *Del. C.* § 2301, *et seq.* . . . does not provide for a private cause of action.").

[78] *Truck Ins. Exch. v. O'Mailia*, 343 P.3d 1183, 1188 (Mont. 2015) (holding district court properly dismissed insured's counterclaims under MUTPA after granting insurer summary judgment that it had no duty to defend or indemnify); *Safeco Ins. Co. of Am. v. Matthew Grieshop*, 2021 WL 1209564, at *14 (D. Mont. Mar. 31, 2021) (dismissing claims under MUTPA after finding the insurance policy afforded no coverage and there was no breach of duty to defend); *Dunluck v. Assicurazioni Generali S.P.A. – UK Branch*, 2022 WL 684377 (D. Mont. Mar. 8, 2022) (same).

24

breach the insurance contract."[79]  The case it relies on, *Graf v. Continental Western Insurance Company*, involves neither the duty to defend nor a breach of an insurance contract and is inapposite.[80]

III.

Finally, Stillwater claims that the Superior Court exceeded its discretion in denying Stillwater's motion for voluntary dismissal and its motion to stay.  For the voluntary dismissal motion, the question before the Superior Court was whether there would be any "plain legal prejudice" to the defendants by voluntary dismissal.[81]  The court considers: (1) the defendants' effort and expense in preparation for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; (3) insufficient explanation for the need to take a dismissal; and (4) whether a motion for summary judgment has been filed by the defendant.[82]

The Superior Court denied Stillwater's motions after it found that Stillwater had not offered a sufficient explanation for the need to dismiss the Delaware action and pursue the claims in Montana.[83]  Specifically, the court noted that Stillwater

---

[79] Opening Br. at 35–36.

[80] 89 P.3d 22 (Mont. 2004).

[81] *Draper*, 625 A.2d at 863.

[82] *Id.* at 864.

[83] App. to Opening Br. at A0153.  Stillwater argues that the court's finding incorrectly put the burden on Stillwater to show a sufficient explanation instead of requesting the Insurers to show insufficient explanation.  Opening Br. at 39.  This argument draws a non-existent distinction between a finding of *no sufficient* explanation and a finding of *insufficient* explanation.

25

previously asserted that Delaware law should apply, and even if Montana law ended up applying, the court was capable of applying foreign law.[84] The court also found that granting dismissal after the adverse ruling of *Solera II* would promote forum shopping and would result in piecemeal litigation because NUFI's declaratory judgment claims would still remain.[85]

The Superior Court did not exceed its discretion. It is well within the trial court's discretion to deny a motion for voluntary dismissal based on forum shopping concerns.[86] The motion – filed simultaneously with the Montana action after *Solera II* – was a tactical decision to avoid adverse Delaware precedent. Stillwater argues that it was NUFI that forum shopped because it first filed the declaratory judgment in Delaware. But Stillwater ignores the fact that it, too, filed a complaint in Delaware and then affirmatively argued for the application of Delaware law.

With the motion to stay, Stillwater concedes that "the issue of the stay depends upon resolution of the conflict-of-laws issue."[87] Having resolved the conflicts-of-laws issue against Stillwater, we affirm the denial of the motion to stay.

---

[84] App. to Opening Br. at A0152–55.
[85] *Id.*
[86] *See AT&T Wireless Services, Inc. v. Federal Ins. Co.*, 2005 WL 2155695, at *5 (Del. Super. Aug. 18, 2005) (denying motion for voluntary dismissal and finding "plain legal prejudice from what is perceived as mere forum shopping to obtain a litigation advantage"); *In re Walt Disney Co. Derivative Litig.*, 1997 WL 118402, at *4 (Del. Ch. Mar. 13, 1997) ("[D]efendants will suffer prejudice if plaintiffs may dash in and out of a forum based on tactical considerations and an assessment that their case looks weak in light of the governing law in a particular jurisdiction.").
[87] Reply Br. at 26.

## IV.

The judgment of the Superior Court is affirmed.